BEESON ET AL. V. JOHNS ET AL.

1. **Taxation**: ASSESSMENT OF LAND: VIEWING THE PROPERTY: STATUTE CONSTRUED. Under section 720 of the Revision (Code, Sec. 812) it is not necessary to the validity of an assessment of real property that the assessor shall personally examine the land.

2. ———: ———: CORRECTION BY AUDITOR: BURDEN OF PROOF. In an action to set aside a tax deed, where in the description of the land on the assessment roll as returned by the assessor, the letters "SW" have been changed to "NE," and there is evidence tending to show that the change was made with authority by the deputy auditor (Rev. 747), and the roll so changed has been regarded as correct in all subsequent records and proceedings, including the sale of the land for taxes, the burden of proof is upon the plaintiff, whose duty it was to see that the land was properly assessed, to show that the assessment as shown by the changed roll was unauthorized and void.

3. **Tax Sale**: FRAUD: EVIDENCE. Proof that there were three bidders at a tax sale, and that they did not bid one against another, is not sufficient evidence to establish a fraudulent combination among them.

4. **Taxation**: UNEQUAL: RESIDENTS AND NON-RESIDENTS. Where no fraud is shown, and it appears only that improved lands were not assessed as high in proportion as unimproved, but that no discrimination was made between the unimproved lands of residents and non-residents, the assessment was not void, under the ordinance of 1787, or the act of Congress admitting the State of Iowa into the Union. DAY, J., *dissents in part*, basing his opinion on his view of the *facts*.

*Appeal from Grundy Circuit Court.*

THURSDAY, JULY 13.

THE plaintiffs, claiming to be the owners of certain real estate, brought this action to set aside a tax title to the same on the grounds: "*First*, that there was no assessment; *Second*, that there was a fraudulent combination among the purchasers at the tax sale; *Third*, that there was no assessment to the unknown owners in tracts of forty acres corresponding to the smallest government subdivisions as required by law; and *Fourth*, that the owners being non-residents of the State the assessment was at a greater value than the property of

Beeson v. Johns.

residents. There was a trial to the court and the petition dismissed. The plaintiffs appeal.

*Alford & Gates,* for appellants.

*W. V. Allen,* for appellees.

SEEVERS, CH. J.—I. Eighty acres of the land in controversy is in section 29, township 97, range 15. The owners being unknown the land in said section was assessed to the unknown owners in quarter-section tracts, the value being fixed at four dollars per acre. When the assessment was returned to the board of supervisors it was rejected by the board and the assessor directed to assess the same in forty acre tracts. This he did, and made return thereof to the board, and on such assessment the taxes were levied. The second assessment was made by fixing the value of each forty acre tract at the same value per acre as had been done at the first assessment. There was no new examination made, and in fact the assessor did not at any time personally examine the land. It is said such assessment is void because the statute then in force required the assessment to be made at the cash value of the land, having due regard to its quality, location, natural advantages and other elements of value. Rev., § 720. The argument is that the assessor could not comply with the requirements of the statute unless he examined the land and determined its value in accordance with the requirements of the statute. It may be the assessment was irregular but we do not believe it was void. A literal compliance with the statute, if a personal examination of each forty acre tract is required would necessitate that the corners and boundaries thereof should be ascertained. The aid of a surveyor would be necessary, and this would require more time than the assessor is allowed by law to complete the assessment. We do not believe the assessor is required to personally examine each forty acre tract, but of necessity he must arrive at the value from in-

1. ASSESS- MENT of land: viewing the property: statute.

formation derived from others, having regard, however, to the elements of value prescribed by statute. If he makes mistakes in this respect, as he may do, ample opportunity is given the owner to have the same corrected.

One forty acre tract of the land in controversy is the NW $\frac{1}{4}$ of the NE $\frac{1}{4}$ of section 31, township 87, north of range 15, west.

The whole northeast quarter was omitted by the assessor and not assessed by him. When he made the second assess-

2. ——; correction by auditor: burden of proof.

ment and returned the roll to the board of supervisors there was contained therein the following: "NW, SW 31, 87, 15, 48 30–100 acres." The number of acres was correctly stated. At some time, and by some person, after the assessment roll had been returned to the board of supervisors, there was written with a pencil over the letters "SW" the letters "NE" so that thereafter the land assessed appeared on the roll to be in the northeast quarter instead of the southwest quarter as returned by the assessor. No change was made in the value fixed by the assessor. The statute in force at the time the assessment was returned authorized the auditor to "correct any clerical or other error in the assessment or tax book." Rev., § 747. The auditor testified he believed the alteration or correction in the assessment had been made by his deputy. It is true, his evidence is not of a certain or decided character, but there is nothing contradictory thereto. The assessment roll, as corrected, has been at all times on file in the auditor's office and the land was described in the tax books and sold as described in the corrected assessment roll. There is no evidence tending to show the land was assessed or taxed more that once. Under the circumstances we are forced to conclude the correction was made by the deputy auditor. That he was authorized to do so there is no doubt. The fact that the roll as corrected has remained on file as a record in the auditor's office, and that it has been regarded in the subsequent proceedings as correct, casts upon appellants the burden of showing that it

Beeson v. Johns.

was incorrect and that the taxes assessed on the land were inequitable or unjust. This they have failed to do. Besides this, it was the duty of the owner to see that this land was properly assessed, and the statute then in force provided that no error or irregularity in the assessment shall render the taxes invalid or affect the title of anyone claiming under a tax deed. It may be conceded the corrected assessment was irregular. It was not, we think, void.

II. There were three bidders at the tax sale and they did not bid against each other, and this constitutes the only evidence there was of a fraudulent combination. We feel constrained to say this evidence is not, in our opinion, sufficient. Fraud cannot be presumed, but the contrary presumption must be indulged in the absence of evidence. It might well be that each bidder obtained all the land he wanted without the necessity of bidding against anyone else.

3. TAX SALE: fraud: evidence.

III. Conceding the land in controversy belonged to nonresidents and that it was assessed at a greater value than similar land belonging to residents, is the tax title void under the ordinance of 1787, or the act of Congress admitting the State of Iowa into the Union? We are not prepared to say if such an assessment was objected to at the proper time and manner it could be sustained; but we do not believe, under the facts in this case, the title of the purchaser at the tax sale, by reason thereof, is void. The authorities cited by counsel for the appellant do not go to this extent. Fraud is not alleged or shown, nor is it claimed there was an actual intent to discriminate against non-residents. At most, it appears the improved lands of residents were not assessed as high, in proportion, as the unimproved lands. No discrimination was made between the unimproved lands of residents and non-residents. For aught that appears, the relative value of the improved and unimproved lands was erroneous only. Under such circumstances a correction or abatement should have been applied for as

4. ASSESSMENT of lands: unequal: residents and non-residents.

provided for by law. The assessment and levy were not void and for the correction of the error the remedy provided by law is ample for the complete protection of the tax payer. Cooley on Taxation, 528.

AFFIRMED.

DAY, J., *dissenting.* I cannot concur in so much of the foregoing opinion as pertains to the NW NE, 31, 87, 15. The evidence shows that the assessor made two assessments. In the first assessment the lands of unknown owners were assessed in tracts of 160 acres. In this assessment the whole of the NE $\frac{1}{4}$ of section 31, 87, 15, was omitted. The assessor was then directed to re-assess the lands of unknown owners in tracts of forty acres. He made a re-assessment in tracts of forty acres in which also the whole of the NE $\frac{1}{4}$ of section 31, 87, 15, was omitted. In this assessment the following appeared: "NW, SW, 31, 87, 15, number of acres 48.30, value per acre $4, total valuation $192.70." Over the letters "SW" there is now written in pencil the letters "NE." The evidence does not show when this was done. Mr. Willoughby, who was county auditor in 1869, expresses the opinion that it was done in July, 1869, and that the letters are in the handwriting of his deputy. That the assessor in fact assessed the NW, SW and the change was not made to correct a mistake in the work of the assessor is evident from the fact that the whole of the NE $\frac{1}{4}$ of section 31 was omitted from the assessment, and from the further fact that the number of acres attached 48.30, is fractional. The evidence shows that the NW, SW is fractional, but that the NW NE is not. Besides, if this assessment is treated as an assessment of the NW, NE then the NW, SW is left without assessment. It is not competent for the deputy auditor thus to shift an assessment from one tract to another. Mr. Willoughby, the county auditor, testified as follows: "We, my deputy and I, corrected together the most of the assessor's books, part of, not all * * *. Sometimes when we found that the assessor had not properly described the tract of land,

we corrected the description, and sometimes we did not  *  * ,
So far as this land is concerned we did not, from the fact that
it is entered here as fractional, when the NE $\frac{1}{4}$ is not frac-
tional." It is very clear to me that the writing in pencil, if
·done by the deputy auditor, did not correct a clerical or other
error of the assessor. The error of the assessor was in omit-
ting from assessment the whole of the NE $\frac{1}{4}$ of section 31.
This error could not be corrected by changing the NW, SW
of section 31 to the NW, NE of section 31. The only effect
of this would be to include a part of the NE and exclude an
equal part of the SW. In my opinion there never was any
assessment of the NW, NE section 31, and as to it the judg-
ment of the court below should be reversed.