AVOCA STATE BANK, Appellee, v. GEORGE A. BURKE, County Auditor, Appellant.

TAXATION: Levy and Assessment—Deduction For "Bad" Paper in re Bank Stock. In arriving at the assessable value of shares of bank stock, there is no authority to deduct from the bills receivable any amount for "bad" paper, and such unauthorized allowance is correctable by the county auditor, even though it has passed the board of review. (Secs. 1322, 1385-b, Code Supp., 1913.)

*Appeal from Pottawattamie District Court.*—J. B. ROCKAFELLOW, Judge.

JUNE 23, 1922.

IN THE district court, this was an appeal from the action of the county auditor of Pottawattamie County, correcting the assessment of the plaintiff as the same was returned and filed by the township assessor, whereby said county auditor struck out of the said return of assessment certain deductions allowed by the assessor, and whereby the auditor raised the assessment of the plaintiff correspondingly. The district court sustained the appeal, and nullified the action of the county auditor, reversed his order, and restored the assessment as made by the township assessor. From the order of the district court, the defendant has appealed.—*Reversed.*

*C. E. Swanson,* for appellant.

*Preston & Dillinger,* for appellee.

EVANS, J.—For the purpose of assessment, the plaintiff bank furnished to the township assessor a verified itemized statement, conforming to the requirements of Section 1322, Supplement to the Code, 1913. On its own motion, it included in such verified statement an item of depreciation for "slow, doubtful, and bad paper," estimated at 3 per cent of its bills receivable, and amounting to $18,670.67. It claimed a deduction of such amount from the assessable value of its shares of stock. This claim was recognized by the assessor, who deducted the amount from the assessed valuation, and made his return of assessment accordingly. Other deductions were made in the verified statement and allowed by the assessor, including investments in real estate and government bonds. These latter items of deduction are not involved in the controversy. Though the sum total of the capital, surplus, and undivided profits of the bank was approximately $78,000, the effect of the allowance of the item of 3 per cent depreciation was to absorb the last remnant of assessable value of the plaintiff's capital, and to leave such capital with no assessable value whatever. The county auditor assumed to correct the assessment as returned by the assessor, on the ground that it was mistaken in its computations, and he eliminated the item of depreciation. Such elimination correspondingly increased the assessable value of the plaintiff's capital.

The questions presented upon the record are:

(1) Was the township assessor justified in recognizing the item of alleged depreciation and in estimating it at 3 per cent of the bills receivable, and in deducting the same from the assessable value of plaintiff's capital as such value would appear if based on the statutory items of capital, surplus, and undivided profits?

(2) If nay, did the county auditor have power to correct the assessment by eliminating such item of depreciation, under the provisions of Section 1385-b, Code Supplement, 1913?

I. The contention for appellee is that, under the statute, all property, including bank stock, must be assessed at its actual value; that the item of depreciation, estimated at 3 per cent of the bills receivable, was a proper item to be considered in

arriving at the actual value of such bills receivable; that the record discloses, by a stipulation of the parties, that the net actual value of the bank's assets was not greater than was made to appear in the assessment by the assessor after deducting the item of depreciation.

The real question before us at this point, however, is: *How or by what method* is the assessor to ascertain the net actual value of bank capital stock? There is no practical method by which it can be ascertained with mathematical certainty. Some degree of estimate and opinion must enter into the ascertainment. In the interest of uniformity and approximate certainty, and for the purpose of eliminating the uncertain and uninformed estimate and opinion of the assessor, the statute (Section 1322) has laid down a rule of evidence, and has made the same obligatory upon the assessor. This rule of evidence is predicated upon the books of the bank itself. It is made the duty of the bank to furnish to the assessor a verified statement from its books, of certain items which are deemed determinative of actual value. The capital, surplus, and undivided profits, as they appear upon the books of the bank, subject to certain specified deductions, are deemed by the statute to disclose with approximate mathematical certainty such value. The books of the bank are kept under the sanction and under the restraints of the law, as well as under the eyes of public examiners, who make frequent examinations thereof. False entries or deceptions in these books are punishable as crimes. These books represent daily computations of the value of the assets. It is to the interest of the banks that such computations be correct. These computations receive the approval of public examiners in their periodical examinations. Under the statute, therefore, the books are deemed the best evidence of value of the assets. Better evidence could hardly be conceived of. The policy of the statute, therefore, is to adopt it as binding both upon the bank and upon the assessor. Such was the substance of our holding in *First Nat Bank of Remsen v. Hayes*, 186 Iowa 892. We held, in effect, in the cited case that the verified statement to be furnished by the bank must be predicated upon its books. We held, also, that the statute was mandatory upon the assessor, and that its prac-

tical effect was to forbid him to interpose against such evidence his own estimate of values, and that his duty in the premises thereby became ministerial, rather than discretionary or judicial. The item of depreciation, claimed as a deduction, was a mere estimate on the part of the bank officials in claiming the same, and was likewise an estimate on the part of the assessor in allowing the same. If his action can be sustained in allowing such item upon his own estimate, then we restore to him his quasi judicial power, and we must cease to say that the statute is mandatory upon him. Unless we are prepared to recede from our pronouncement in the cited case, we must hold that the item of depreciation claimed had no place in the verified statement required by the statute, and that the assessor had no power to pass judgment of approval thereon. The effect of the statute is to say that the bank cannot be permitted to carry one valuation upon its books for the purpose of its current business, and yet to present to the assessor a reduced valuation for the purpose of taxation. There is no limitation upon the right of the bank to charge off all its bad paper on its books and to reduce its assets accordingly. Whether it does so charge off or fails to charge off becomes the test of the value of its assets in the presence of the assessor. If it had chosen to charge off $18,000 of its bad paper upon its books, it could have got the full benefit of the deduction in its statement to the assessor. Nothing less than this would entitle it to claim the deduction from the assessor. The reasons for this pronouncement are fully set forth in the cited case, *First Nat. Bank of Remsen v. Hayes*. They are considered and confirmed in *Security Sav. Bank v. Board of Review*, 189 Iowa 463. We have little occasion, therefore, to repeat the discussion. We deem the first cited case controlling in the case at bar.

II. The second question is whether the county auditor had power to correct the assessment by the rejection of the item of depreciation. It is urged by the appellee that, in view of the approval by the board of review of the assessment as made by the assessor, there could be no subsequent review, except by appeal from the board of review. On this question the cited case, *First Nat. Bank v. Hayes*, is also conclusive. In that case

we sustained the action of the county auditor in striking out an allowance of deduction, on the theory that the action of the assessor was an error, within the meaning of the statute, Section 1385-b. While it is doubtless true that the board of review could have corrected the error if it had discovered it, yet the failure of the board of review to correct the erroneous item did not validate it. If the assessor lacked the power to approve it as a deduction, it necessarily followed that the board of review lacked power also. We must hold, therefore, that the county auditor did have power to strike out the item. It follows that the order of the district court must be reversed. The correction made by the county auditor will be reinstated, and allowed to stand. The appellant at its election may, on motion, have the cause remanded to the district court for final order consistent herewith, or a decree may be entered in this court.—*Reversed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.