FIRST NATIONAL BANK OF GUTHRIE CENTER, Appellant, v. L. B. ANDERSON, County Auditor, et al., Appellees.

**TAXATION:** Assessment—"Error in Assessment" Defined—"Omitted" Property. An assessor who, in determining the value of bank stock, deducts from the capital, surplus, and undivided profits of the bank the amount of Federal tax-exempt securities owned by the bank, on the mistaken belief that a legislative enactment required such deduction, when in truth such enactment was invalid, thereby commits an *"error in the assessment or tax list,"* within the meaning of Sec. 1385-b, Code Supp., 1913. In other words, such unauthorized deduction does not present a case of "omitted property," within the meaning of said section.

**TAXATION:** Assessment—Time Limit for Correction. An *"error in the assessment or tax list,"* within the meaning of Sec. 1385-b, Code Supp., 1913, may be corrected by the county auditor, without notice, and at any time *before the taxes have been legally discharged.*

**TAXATION:** Assessment—Correction of Error. An *"error in the assessment or tax list"* may be corrected by the county auditor, notwithstanding the fact that the erroneous action of the assessor was approved by the county board of review.

**TAXATION:** Assessment—Deduction in re Federal Securities. In determining the value of shares of stock of a national bank for the purposes of taxation, there need be no deduction from the capital stock because of investments in tax-exempt securities of the Federal government.

**TAXATION:** Assessment—Discrimination Against National Banks. An allegation that *"moneyed capital"* is loaned and invested in a taxing district, and that the tax levied thereon is materially less than the tax levied in said district on shares of stock of national banks, tenders no issue of discrimination under Sec. 5219, Revised Statutes of the United States. There must be allegations of ultimate fact from which it can be determined, not only that said *"moneyed capital"* is employed in said district *in competition with the ordinary and normal business of national banks,* but that the amount of such moneyed capital is *relatively material.*

**TAXATION:** Collection—When Injunction Will Not Lie. Equity will not interfere to prevent the collection of a lawfully authorized tax on account of mere irregularities in the assessment.

**EVIDENCE:** Judicial Notice—Population and Area. The courts will
8  take judicial notice of the area of a county and of the population
and location of the cities and towns of such counties.

PRESTON, C. J., dissents as to correction of assessments.

*Appeal from Guthrie District Court.*—H. S. DUGAN, Judge.

FEBRUARY 17, 1923.

REHEARING DENIED OCTOBER 16, 1923.

ACTION in equity, to restrain the collection of an alleged
void tax. A demurrer to plaintiff's petition was sustained, and
it appeals.—*Affirmed.*

*J. G. Gamble* and *Foster & Foster,* for appellant.

*Batschelet & Vincent,* for appellees.

*Ben J. Gibson,* Attorney-general, and *B. J. Flick,* Assistant
Attorney-general, *Amici Curiae.*

ARTHUR, J.—I. This is an action in equity by the First
National Bank of Guthrie Center, Iowa, against L. B. Anderson,
county auditor, and G. F. Taylor, county treasurer, respectively,
of Guthrie County, Iowa, to enjoin the collection of certain taxes
which appellant alleges were illegally charged against its share-
holders for the year 1920. A general equitable demurrer to the
petition was sustained, and, appellant electing to stand thereon
and refusing to plead over, judgment dismissing the action was
entered in the court below.

The demurrer admits that, on or about January, 1920, ap-
pellant furnished to the assessor of Guthrie Center, Iowa, the
verified statement required by Section 1322 of the Code Supple-
ment, 1913, showing the net value of its capital, surplus, and
undivided profits, after deducting the value of its real property,
to be $91,507.83; that it was the owner of government securities,
consisting of United States certificates of indebtedness, war sav-
ings certificates and stamps, and United States Liberty Bonds
of the various issues, of the aggregate value of $106,650; that, at
the request of the officers of appellant, the assessor deducted or
offset the value of its government securities against its capital,

surplus, and undivided profits, in compliance with Chapter 257, Acts of the Thirty-eighth General Assembly; that, as the amount of government securities held by appellant exceeded the value of its capital, surplus, and undivided earnings, nothing remained to be assessed to the shareholders; that the verified statement furnished to the assessor by appellant was by him passed to the board of equalization, and the deduction or offset allowed by the assessor approved by said board; that, on or about the first day of January, 1921, and within the time fixed by law, the county auditor delivered the tax books to the county treasurer; that the tax assessed against the real estate of appellant bank has been paid; that, after said tax lists had been turned over to the county treasurer, and on or about February 26, 1921, the county auditor corrected the same by placing thereon the names of the shareholders of the appellant bank, together with the amount of tax properly assessable to each of said shareholders; that the only notice given to appellant by the county auditor of the entries and corrections made upon the tax list in the treasurer's office was a letter addressed "to all banks in Guthrie County," dated February 26, 1921, informing said banks that the state auditor had directed that the tax list for 1920 be corrected, and that same would be done, in conformity to a decision of the Supreme Court of the state of Iowa. The decision evidently referred to was *Des Moines Nat. Bank v. Fairweather*, 191 Iowa 1240, which held that Chapter 257, Acts of the Thirty-eighth General Assembly, had been illegally passed by the legislature, and therefore never became operative.

The demurrer further admits that the rate of taxation of Guthrie Center, Iowa, for the year 1920 was 143.5 mills on the dollar, and that a large amount of moneyed capital, charged upon information and belief to exceed $5,000,000, was taxed in Guthrie County in 1920 at the statutory rate of 5 mills on the dollar, and that the total value of the capital, surplus, and undivided earnings of state and national banks in said county in the year 1920 did not exceed $316,852.

The verified statement furnished by appellant to the assessor, in addition to the matters stated above, showed the amount of the bank's assets and liabilities, the names and place of residence of its shareholders, and the number of shares owned by

each, together with par value thereof. This document was filed in the auditor's office May 1, 1920.

It is further claimed by appellant that the demurrer also admits that the allowance by the assessor, and the approval thereof by the board of equalization, of the deduction of the $106,650 in government securities, left nothing to be assessed to the shareholders, and that no entry was made by the assessor upon the assessment rolls or books furnished him by the county auditor, and that no liability was directly or indirectly imposed upon appellant or its shareholders, other than that arising out of the assessment of its real estate to the bank.

Based upon the foregoing facts and some legal conclusions alleged in its petition, appellant urges that the tax claimed to have been levied against its shareholders, which it is charged the county treasurer is threatening to collect, is wholly void, for the following reasons: (1) That no assessment of the shares of stock of appellant bank was made by the assessor, the board of equalization, or other taxing authority, for the year 1920; (2) that the authority conferred upon county auditors by Section 1385-b of the Supplement to the Code, 1913, to correct errors in the assessment or tax lists is limited to the current year, and that the auditor of Guthrie County exceeded his authority when he corrected the tax lists which he had delivered to the county treasurer on or prior to December 31, 1920; (3) that, before such correction of the tax list or omitted property could be made by the county auditor, notice, as prescribed by said Section 1385-b, must be given, and that without such notice the correction of errors in the assessment or tax lists is illegal; (4) that the entries made by the auditor upon the tax list in this case are not such as come within the meaning or purview of the statute which authorizes the auditor to "correct any error in the assessment or tax list," but are, in effect, an attempt to assess omitted property, without notice; (5) that the exemption allowed by the assessor and approved by the board of equalization was final, and could only be corrected on appeal to the district court; (6) that, if the county auditor acted within the scope of his authority in making the entries complained of upon the tax lists, the tax demanded is, nevertheless, void for the reason (a) that it was an attempt to subject nontaxable securities of the

United States to taxation, and (b) that the statute providing for a tax of 5 mills on the dollar of moneyed capital loaned and invested in competition with national banks discriminates against the same, and is void under Section 5219 of the Revised Statutes of the United States.

Do the facts admitted by the demurrer entitle appellant to relief in equity, or was the demurrer properly sustained?

Although this is not so recited in the petition, it is a matter of common knowledge that the verified statement made by the bank is upon blanks furnished to the assessor and by him to the bank. The copy of the statement attached to plaintiff's petition discloses every fact necessary to the assessor in assessing shares of stock of national and state banks, and contains the certificate of the assessor of the assessment and taxable value of such shares.

1. Taxation: assessment: "error in assessment" defined: "omitted" property.

Conceding that the assessor did not enter the list of shareholders upon the assessment roll, designated by Section 1360, Code Supplement, 1913, and that no assessment was entered upon the assessor's books, the omission was clearly due to the fact that Chapter 257, Acts of the Thirty-eighth General Assembly, provided that government securities owned by a bank in good faith shall, before assessing the same to the shareholders, be deducted from the amount of its capital, surplus, and undivided profits. As the former sum in this instance exceeded the latter, there was no occasion for making an assessment roll, or of entering the names of the shareholders upon the assessor's books. The deduction of the government securities owned by the bank from the value of the capital, surplus, and undivided profits by the assessor and board of equalization was at the request of appellant, and no doubt under the belief that Chapter 257 of the Acts of the Thirty-eighth General Assembly had been legally enacted.

The opinion in *Des Moines Nat. Bank v. Fairweather,* supra, was not filed until February 12, 1921. Until the announcement of the decision by the court in that case, the taxing authorities were ignorant of the fact that the exemptions had not been properly allowed.

The method of assessing the property of national and state

banks is wholly distinct and different from that of assessing other property. The verified statement furnished by the bank to the assessor contained a blank place in which it was his duty to enter a list of the bank's shareholders, the number of shares, and the taxable value thereof. The blank thus provided was not filled out by him; but the statement, as we have already said, included a complete list of shareholders, giving their post-office address, and the number of shares held by each. The deductions allowed exceeded the total value of the capital, surplus, and undivided profits of the bank, and there was nothing to enter in the blank space on the statement. Although this statement was not in the precise form of assessment rolls prescribed by Section 1360 of the Supplement to the Code, 1913, it was in effect the same, and may be so treated. It was made the basis of whatever action was taken by the board of equalization, and, when filed in the office of the county auditor, disclosed to him the exact situation as to the taxable property of the bank, together with the names of its shareholders and the number of shares of stock held by each. The property in controversy was property of the bank, assessable to its shareholders, of which due and proper return was made by the assessor to the board of equalization; but the assessor, at most, failed to perform a possible ministerial duty to insert the names of the shareholders and otherwise fill out the blank. This was due, no doubt, to the fact that the total value of government securities owned by the bank exceeded its capital stock, surplus, and undivided profits. This omission was shown in the auditor's office by the filing of the statement therein; so that, when the invalidity of Chapter 257, Acts of the Thirty-eighth General Assembly, was declared by the court, the only thing necessary to complete the records in the treasurer's office was to enter upon the tax list the names of the shareholders, the number of the shares held by each, and the taxable value thereof.

In view of the facts, and the law as it was believed by all parties to be at the time, it would have been an idle thing for the assessor to have filled out the blank. The deductions allowable under Chapter 257, Acts of the Thirty-eighth General Assembly, exceeded the value of the capital, surplus, and undivided profits of the bank; hence no taxable value could have

been set opposite the names of the shareholders. In the assessment of the property of national and state banks other than its real property, nothing is left to the discretion of the assessor or the board of equalization. Section 1322 of the Code Supplement, 1913, provides that:

"To aid the assessor in fixing the value of such shares, the said corporation shall furnish him a verified statement of all the matter provided in Section 1321 of the Supplement to the Code, 1907, which shall also show separately the amount of the capital stock and the surplus and undivided earnings, and the assessor from such statement shall fix the value of such stock based upon the capital, surplus, and undivided earnings."

This statute has been upheld in numerous cases. *First Nat. Bank of Remsen v. Hayes,* 186 Iowa 892; *Avoca St. Bank v. Burke,* 193 Iowa 1055.

The furnishing to the assessor by appellant of the verified statement required by Section 1322 of the Code Supplement, the return thereof by him to the board of equalization, and the action taken by that body, were all regular and necessary steps in the process of assessing the property of the bank.

But it is further urged upon us by appellant that the authority of the auditor to correct errors in the assessment or tax lists is limited to the year in which the assessment was made, 2. TAXATION: as-. and could not be legally exercised after December 31st in such year, and that the attempted correction in this instance by the auditor of the tax lists in the treasurer's office amounted, in effect, to the assessment of omitted property, which it is conceded could not be done without notice to the bank or shareholders. In so far as the contention of appellant relates to the subject of notice, it is erroneous.

Section 1385-b is as follows:

"The auditor may correct any error in the assessment or tax list, and may assess and list for taxation any omitted property; but before assessing and listing for taxation any omitted property he shall notify by registered letter the person, firm, corporation, or administrator, or other person in whose name the property is taxed, to appear before him at his office within ten

days from the time of said notice and show cause, if any there be, why such correction or assessment should not be made.''

Clearly, this statute does not require notice to be given of the correction of an error in the assessment or tax lists, but only of the proposed assessment of omitted property. This is the clear implication of the statute.

It would seem to be equally clear that the authority of the auditor to correct the tax lists of the preceding year continues until the taxes have been paid or otherwise legally discharged. *First Nat. Bank of Remsen v. Hayes*, 186 Iowa 892. Whatever doubt may have previously existed on this point arose from the use of the term ''current year'' in *In re Estate of Mead v. Story County*, 119 Iowa 69. This term also appears in *First Nat. Bank of Remsen v. Hayes*, supra, and in *Langhout v. First Nat. Bank*, 191 Iowa 957. The words are not, however, to be found in the statute, nor are they defined in any of the cases cited. It has been generally held that the term, when used in taxing statutes, does not refer to the calendar year. *Pittsburg, C. C. & St. L. R. Co. v. County Treasurer*, 78 O. St. 227 (85 N. E. 49) ; *Hinton v. Roane*, 124 La. 927 (50 So. 798) ; *Clark v. County of Lancaster*, 69 Neb. 717 (96 N. W. 593).

The purpose of the statute is to prevent property from escaping taxation. Provision is made therein for the assessment of omitted property, and also for the correction of errors in the tax lists. The authority of the auditor to correct the tax lists is not expressly or impliedly limited to the time within which he is required to deliver the same to the treasurer, but continues until the tax has been paid, or otherwise legally discharged. Property is listed by the assessor for taxation prior to April 1st in each calendar year, but taxes are not payable until the 1st of January of the succeeding year.

The implication of the following sentence of Section 1385-b is clear and unmistakable:

''And if such correction or assessment is made after the books have passed into the hands of the treasurer, he [the treasurer] shall be charged or credited therefor as the case may be.''

We said, in *First Nat. Bank of Remsen v. Hayes*, supra, that:

''The error in the assessment or tax list is one relating to

perfecting the tax list in the course of preparation or thereafter, at any time prior to the payment of taxes levied. Retroactive authority is not expressly conferred on the auditor, and there is no good reason for saying that, after the tax lists have been perfected by the officers, in so far as they know, and accepted by the property owner in discharging the burden imposed, the auditor may go 'back of the returns' and, by the correction of errors thereafter discovered, exact payment of additional sums as taxes which neither the public nor the taxpayer knew of, or might reasonably have anticipated. There ought to be a time beyond which even an error in name, description, or. valuation may not be corrected to the detriment of the taxpayer, and that time is when the proceedings relating to assessment, listing, and collection of the tax, always construed *ad invitum,* have been consummated by full payment of the amount exacted by the records as they then exist.''

Nor can the contention of appellant that the effect of the entries made by the auditor upon the tax lists was the assessment of omitted property be sustained. As said above, the statement furnished by the assessor to the bank and re-3. TAXATION: assessment: "error in assessment" defined: "omitted" property. turned to him thereby, properly filled out and verified, is, in addition to the statements required to be made by the officers of the bank, in substance and effect an assessment roll. Had the assessor written the names of the shareholders, together with the amount of stock held by each and the taxable value thereof, in the blank space provided for that purpose, the assessment roll would have been complete. Manifestly, the omission was due to the belief then held by the officers of appellant and the taxing authorities that, under the provisions of Chapter 257, Acts of the Thirty-eighth General Assembly, there was nothing to be charged. It must be assumed that it was not the intention of the assessor, the board of equalization, or the officers of appellant that the capital, surplus, and undivided profits of the bank should be omitted from taxation. Every step in the process of assessing it to the shareholders was taken, and the only omission was that of the assessor in failing to fill in, in the blank space provided therefor, the names of the shareholders and other matters to be entered thereon, and the only error committed was the

deduction of the amount of government securities held by the bank.

The facts do not present a case of the assessment of omitted property. The situation shown is very similar to that involved in *Avoca St. Bank v. Burke*, 193 Iowa 1055. In that case, the assessor and board of equalization allowed a deduction of three per cent for slow, doubtful, and bad paper of the Avoca State Bank, from the capital, surplus, and undivided profits. The auditor corrected the assessment by striking out the deduction. We held that this was proper, under the authority conferred upon him by Section 1385-b.

To the same effect, see *First Nat. Bank of Remsen v. Hayes*, supra.

Further, as to what errors may be corrected by the auditor, see *Parker v. Van Steenburg*, 68 Iowa 174; *Beeson v. Johns*, 59 Iowa 166; *Polk County v. Sherman*, 99 Iowa 60; *Adams v. Snow*, 65 Iowa 435; *Ridley v. Doughty*, 85 Iowa 418.

We reach the conclusion that the entry by the auditor upon the tax lists in the treasurer's office of the names of the shareholders, the amount of stock owned by each, and the taxable value thereof, based entirely upon the bank's statement of its capital, surplus, and undivided profits, was, in effect, the correction of an error, and not an attempted assessment of omitted property.

But it is further contended by counsel for appellant that, as the board of equalization has passed upon the exemption allowed, and determined that no assessment could be made of the stock of the shareholders of the bank, its action is final and conclusive. *Dowling v. Webster County*, 154 Iowa 603, and other cases cited, are relied upon by appellant to sustain this contention. These cases are not in point. It is too manifest for argument that no one interested in the assessment of the property of the appellant bank contemplated or intended to exempt it from taxation. The effect of the action taken by the board of equalization went no further than to allow the deduction of the amount of government securities owned by the bank, which automatically offset the value of its taxable property. When it was ascertained that the deduction was erroneous, and should not have been allowed,

4. TAXATION: assessment: correction of error.

it was only necessary that the assessment be shown on the tax list in the treasurer's office. This resulted from the entries made thereon by the auditor.

II. The government securities held by appellant are exempt from taxation by the act of Congress authorizing their issue. As already appears, the assessment of state and national banks is

5. TAXATION: assessment: deduction *in re* Federal securities.

not against the corporation, but is against the shares of stock owned by the shareholders, and in listing the same for taxation and in the payment of the tax, the officers of the bank act as the agents of the shareholders. It has been repeatedly held by the Supreme Court of the United States that, in determining the value of shares of stock of a national bank for the purpose of taxation, no deduction can be claimed on account of the capital of such bank invested in government securities which are exempt from taxation. *First Nat. Bank v. Commonwealth of Kentucky,* 9 Wall. 353 (19 L. Ed. 701); *Van Allen v. Assessors,* 3 Wall. 573 (18 L. Ed. 229). See, also, *Head v. Board of Review,* 170 Iowa 300; *First Nat. Bank v. City of Council Bluffs,* 182 Iowa 107; *Des Moines Nat. Bank v. Fairweather,* supra; *People's Nat. Bank of Kingfisher v. Board of Equalization,* 67 L. Ed. ......... In the last cited case, the Supreme Court of the United States, on November 20, 1922, affirmed a decision of the Supreme Court of Oklahoma in the same case. See *Board of Equalization of Kingfisher County v. People's Nat. Bank,* 79 Okla. 312 (193 Pac. 622). This question is settled against the contention of appellant, and calls for no further discussion.

III. Finally, it is claimed by appellant that the tax in controversy is void because the shares of stock of the bank were assessed in violation of Section 5219 of the Revised Statutes of

6. TAXATION: assessment: discrimination against national banks.

the United States, which provides that assessment and taxation of national banks "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state" in which the bank is located.

Section 1310 of the Supplement to the Code, 1913, provides that:

"Moneys, credits and corporation shares or stocks, except as otherwise provided, cash, circulating notes of national bank-

ing associations, and United States legal tender notes, and other notes, and certificates of the United States payable on demand, and circulating or intended to circulate as currency, notes, including those secured by mortgage, accounts, contracts for cash or labor, bills of exchange, judgments, choses in action, liens of any kind, securities, debentures, bonds other than those of the United States, annuities, and corporation shares or stocks not otherwise taxed in kind, shall be assessed, and, excepting shares of stock of national, state and savings banks and loan and trust companies, and moneyed capital as hereinafter defined, shall be taxed upon the uniform basis throughout the state of five mills on the dollar of actual valuation, same to be assessed and collected where the owner resides.''

And with reference to the term ''moneyed capital,'' as used in Section 5219 of the Revised Statutes of the United States, it provides that:

''All moneyed capital within the meaning of Section 5219 of the Revised Statutes of the United States shall be listed and assessed against the owner thereof at his place of business, and if a corporation at its principal place of business, at the same rate as state, savings, national bank and loan and trust company stock is taxed, in the same taxing district, and at the actual value of the moneyed capital so invested.''

It is alleged in plaintiff's petition that a sum believed to exceed $5,000,000 is loaned or invested in Guthrie County by individuals, which is assessed at the flat rate of 5 mills on the dollar; whereas the shares of stock of appellant were assessed to the shareholders at the rate of 143.5 mills on the dollar.

It is not claimed that Section 1310 of the statute is invalid, or that ample provision is not made thereby for the assessment of ''other moneyed capital'' in the hands of individuals or other owners at the same rate as national and state banks are taxed, when invested in competition therewith.

The term ''moneyed capital'' is defined by the Supreme Court of the United States in *Mercantile Nat. Bank v. Mayor of New York*, 121 U. S. 138 (30 L. Ed. 895), as follows:

''The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is

money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are, from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily, with a view to sale or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property.''

The above definition has been since followed by the court with little variation in phraseology, and is quoted with approval in *Merchants' Nat. Bank v. City of Richmond*, 256 U. S. 635 (65 L. Ed. 1135).

The purpose of Congress in forbidding the assessment by the states at a higher rate than that imposed upon ''other moneyed capital'' therein is clearly set forth by Mr. Justice Mathews in *Mercantile Nat. Bank v. Mayor of New York*, supra, as follows:

''The key to the proper interpretation of the act of Congress is its policy and purpose. The object of the law was to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people, and to facilitate the operations of the treasury of the United States. The capital of each of the banks in this system was to be furnished entirely by private individuals; but, for the protection of the government and the people, it was required that this capital, so far as it was the security for its circulating notes, should be invested in the bonds of the United States. These bonds were not subjects of taxation; and neither the banks themselves nor their capital, however invested, nor the shares of stock therein held by individuals, could be taxed by the states in which they were located, without the consent of Congress, being exempted from the power of the states in this respect because these banks were means and agencies established by Congress in execution of the powers of the government of the United States. It was deemed consistent, however, with these national uses, and otherwise expedient, to grant to the states the authority to tax them, within the limits

of a rule prescribed by the law. In fixing those limits it became necessary to prohibit the states from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote. The business of banking, including all the operations which distinguish it, might be carried on under state laws, either by corporations or private persons, and capital in the form of money might be invested and employed by individual citizens in many single and separate operations forming substantial parts of the business of banking. A tax upon the money of individuals, invested in· the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden. The main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy."

And again, the court, in *First Nat. Bank of Aberdeen v. Chehalis County,* 166 U. S. 440 (41 L. Ed. 1069), said:

"A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden. The main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this ·policy. Applying this rule of construction, we are led, in the first place, to consider the meaning

of the words 'other moneyed capital,' as used in the statute. Of course, it includes shares in national banks; the use of the word 'other' requires that. If bank shares were not 'moneyed capital,' the word 'other' in this connection would be without significance. But 'moneyed capital' does not mean all capital the value of which is measured in terms of money. In this sense, all kinds of real and personal property would be embraced by it, for they all have an estimated value as the subjects of sale."

See, also, *Amoskeag Sav. Bank v. Purdy,* 231 U. S. 373 (58 L. Ed. 274); *Talbott v. Silver Bow County,* 139 U. S. 438 (35 L. Ed. 210); *Palmer v. McMahon,* 133 U. S. 660 (33 L. Ed. 772).

Following the above definition of "moneyed capital," as the term is employed in Section 5219 of the Revised Statutes, and the declared purpose of Congress in placing a limitation upon the power of the states to tax national banks, the court has logically and consistently held that the discrimination in the assessment of "other moneyed capital" which will avoid the taxation of national banks exists only when such "moneyed capital" is invested or loaned in competition with national banks. Speaking to this point, the court, in *Commercial Nat. Bank v. Chambers,* 182 U. S. 556 (45 L. Ed. 1227), said:

"The claim of the benefit of the provisions of Section 5219 of the Revised Statutes of the United States is unavailing, for the reason that there was neither averment nor proof of facts taking the case out of the operation of recent decisions of this court. Those decisions held that the term 'moneyed capital,' as employed in Section 5219 of the Revised Statutes, forbidding greater taxation of shareholders of national banks than is imposed on other moneyed capital, does not include capital which does not come into competition with the business of national banks, and that it must be satisfactorily made to appear by the proof that the moneyed capital claimed to be given an unjust advantage is of the character just stated."

This is the principle upon which the decision in *Merchants' Nat. Bank v. City of Richmond,* supra, is rested by the court. To like effect are the following and many other cases: *Mercantile Nat. Bank v. Mayor of New York,* supra; *Palmer v. McMahon,* supra; *San Francisco Nat. Bank v. Dodge,* 197 U. S. 70 (49 L. Ed. 669); *First Nat. Bank of Garnett v. Ayers,* 160 U. S. 660

(40 L. Ed. 573); *Merchants' & Mfrs. Nat. Bank v. Pennsylvania*, 167 U. S. 461 (42 L. Ed. 236); *Amoskeag Sav. Bank v. Purdy*, supra.

Manifestly, it has never been the policy of the Federal government to interfere with the method of taxing property by the states, or to demand that discrimination be made in favor of national banks. Upon this point, the court, in *Mercantile Nat. Bank v. Mayor of New York*, supra, said:

"There is no reason, therefore, to suppose that Congress intended, in respect to these matters, to interfere with the power and policy of the states."

Again, in *Jenkins v. Neff*, 186 U. S. 230 (46 L. Ed. 1140), the court said:

"The main purpose, therefore, of Congress in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy."

In this case it is further said:

"It is essential, if the law of the state is to be declared invalid under the limitations expressed in the United States statute, that the enactment of the legislature shall evidence a disposition to evade or override the spirit of the limiting statute; and this is clearly not the case where it provides for equal taxation upon its own state banks, and where it does not require its trust companies, which, it may be conceded, come into a limited competition with the investors in the shares of national banks, to invest their capital in such a way as to necessarily exempt them from taxation upon a portion of their capital stock. If the state refused to allow its trust companies to invest in United States securities, there might be a far greater cause for grievance. Trust companies are not organized primarily for banking purposes; they are designed for other purposes, as pointed out in the Mercantile Bank case; and it was never the purpose of the Federal government to interfere with the policy of the state in reference to the formation and devel-

opment of such corporations as it should judge expedient, even though it should be found necessary to invest them with some of the powers of banking associations, as an inducement to per-·form the other duties and obligations imposed by the state. As was said in the Mercantile Bank case, in reference to saving banks: 'However large, therefore, may be the amount of moneyed capital in the hands of individuals, in the shape of deposits in savings banks as now organized, which the policy of the state exempts from taxation for its own purposes, that exemption cannot affect the rule for the taxation of shares in national banks, provided they are taxed at a rate not greater than other moneyed capital in the hands of individual citizens otherwise subject to taxation.' "

No discrimination is found in Section 1310, supra, in the taxation of national and state banks. They are taxed upon the same basis and at the same rate. The state has not attempted to foster or develop the business of state banking institutions, rather than national banks, by legislation, nor in any way, so far as methods or rates of taxation are concerned, to discriminate against national banks. · If the assessment of certain moneyed capital in this state at the flat rate of 5 mills on the dollar is a discrimination against national banks, it is equally discriminatory in its operation against state banks.

A careful reading of the cited cases and many others referred to therein leaves no doubt of the purpose of the Supreme Court to liberally construe Section 5219 in giving effect to the manifest purpose of Congress, and in recognition of the efforts of state legislatures to apply the same method and rate of taxation to state banks as are applied to national banks. The question to be determined in the assessment of moneyed capital not invested in national or state banking institutions, so far as discrimination may be claimed, is whether such other "moneyed capital" assessed at a lower rate is invested or loaned in competition with the ordinary and normal business of such banks. Unless it is, Section 5219 of the Revised Statutes of the United States has no application. The petition of appellant alleges simply that notes and other evidences of money loaned, payment of which is secured by mortgages upon farm lands in Guthrie

County, exceed the combined capital of its banking institutions by several million dollars.

Do the ultimate facts set up in the petition, as distinguished from legal conclusions and admitted by the demurrer, entitle plaintiff to equitable relief? It is settled in this state that

7. TAXATION: collection: when injunction will not lie.

equity will not interfere to prevent the collection of a tax authorized by law, on account of mere irregularities in the assessment. *Conway v. Younkin,* 28 Iowa 295; *Morrison v. Chicago & N. W. R. Co.,* 117 Iowa 587.

We have already indicated our conclusion upon all matters touching the formal assessment of the property in question. Certain irregularities upon the part of the assessor are shown, but they are not of such a character as to render the assessment void. This being true, in so far as the ruling of the court sustaining the demurrer was based hereon, it must be upheld.

The court will take judicial notice of the population of Guthrie Center, its location, the area of Guthrie County, and the number and population of other towns located therein. Un-

8. EVIDENCE: judicial notice: population and area.

less the moneyed capital belonging to individuals and invested in farm loans in Guthrie County, which is taxed at the flat rate of 5 mills on the dollar, is loaned in competition with national banks, the tax assessed against the capital, surplus, and undivided profits of appellant is not void under Section 5219. That is, of course, a question of fact. *Merchants' Nat. Bank v. City of Richmond,* supra, and other cases cited.

Although it does not appear upon the face of the petition, it is a matter of common knowledge that banks, national as well as state, particularly in the rural communities of Iowa, are the instrumentalities through which much the larger portion of farm loans is made; that many banks, as such, or through others with which they are interested, act as agents of insurance companies and other financial institutions having large sums of money to loan upon farm security; and that the money of individuals is either loaned directly by the bank for the accommodation of the owner, who is its customer, or loans are made in advance by the bank, and later transferred to such other customers as have money to loan. The money of individuals loaned

in the community thereby becomes a source of profit to the bank. It is also well known that money borrowed upon farm security finds its way at once, or ultimately, into the local banks, and is drawn out in the regular course of the borrower's business.

The Supreme Court of the United States, so far as we are advised, has never had occasion to pass upon the question whether money thus loaned may be said to be invested or loaned in competition with national banks. Upon this question, the decision of the Supreme Court, when announced, will be final; but, until that time arrives, we must adopt and follow our own interpretation of its prior decisions and of the laws of Congress. Surely, moneyed capital loaned and invested by banks, as the agents of their customers, cannot be said to be loaned in competition therewith. Competition means rivalry, and the loaning of money by national and other banks for individuals at a profit, or for the convenience of such owners, is lacking in all the essentials of competition. The petition does not charge that the appellant bank is engaged in loaning its funds upon real estate security. Under the laws of Congress, it could not loan sums in excess of 25 per cent of its capital and surplus, or one third of its time deposits. The amount of its time deposits is not alleged, but the net actual value of its capital, surplus, and undivided earnings is shown to be $91,507.83. It seems to us that the allegations of the petition are wholly insufficient to be made the basis of a holding that the tax in controversy is void because of the large amount of moneyed capital loaned upon farm security in Guthrie County by residents thereof. What amount, if any, of the money thus invested is loaned in competition with appellant is not alleged. We cannot infer from the facts admitted by the demurrer that the moneyed capital referred to is invested in competition with appellant. The burden of showing this fact rested upon appellant. *Merchants' Nat. Bank v. City of Richmond,* supra; *Boyer v. Boyer,* 113 U. S. 689.

It was, therefore, incumbent upon it to allege the ultimate facts with sufficient fullness to enable the court to ascertain therefrom what, if any, "other moneyed capital" is loaned in Guthrie Center and vicinity in competition with the normal and ordinary business of appellant, and whether the amount is "rela-

tively material.'' The demurrer to the petition was properly sustained.—*Affirmed.*

WEAVER, EVANS, STEVENS, FAVILLE, and DE GRAFF, JJ., concur.

PRESTON, C. J. (dissenting.)   This case has been pending for some time.  The majority have arrived at a conclusion.  The case is of much importance, other cases depending thereon.  I shall not delay the matter.  I find myself unable to agree entirely, and I shall state my reasons briefly and somewhat hurriedly.

1. I think we should not overrule our prior cases wherein it has been held that correction must be made during the current year.  It seems to me that the time for making such correction should not be extended indefinitely, which, under the majority opinion, may be for several years.

2. I have never been able to bring myself in agreement with some of our prior cases, and the majority opinion in this case, to the effect that, after an assessment has been regularly made, passed upon, and adjudicated by the board of review, and their decision unappealed from, the assessment may be changed thereafter, and the amount of one's assessment and taxes be increased without notice, under the guise of its being a correction.

3. I am not so sure that the discussion in regard to competition referred to in the majority opinion is applicable now, since the change in the Federal statute in regard to national banks and their authority to loan their funds.  It seems to me that, to that extent at least, it does come in competition.