FIRST NATIONAL BANK OF COUNCIL BLUFFS et al., Appellees, v. GEORGE A. BURKE et al., Appellants (and seven other cases).

**APPEAL AND ERROR: Dismissal—Expiration of Official Term.** An appeal in an action in which the county is the real party in interest will not be dismissed because the terms of office of the official party defendants have expired.

**TAXATION: Levy and Assessment—Bank Stock—Correction of Error Without Notice.** The act of the county board of review in setting off against an assessment of bank stock the amount of Federal tax-exempt securities held by the bank, and thereby wholly canceling the assessment, is not only an *error*, but is a *nullity;* and the county auditor may, *without notice to the bank*, correct the error by entering the proper assessment on the tax books on the basis of the conceded capital, surplus, and undivided profits, less the real estate, of the bank. (See Secs. 1322, 1385-b, Code Supp., 1913.)

**TAXATION: Levy and Assessment—Unauthorized Review—Effect.** The
3 unauthorized act of the county board of review in assuming to
offset against an assessment of bank stock the amount of Federal
tax-exempt securities held by the bank does not constitute an ad-
judication against the proper county officials to correct the error.

**TAXATION: Bank Stock—Constitutionality of Statute.** Constitution-
4 ality reaffirmed of the statute (Sec. 1322, Code Supp., 1913) pro-
viding for the taxation of bank stock on the basis of capital,
surplus, and undivided profits (less real estate), without deduction
for Federal tax-exempt securities held by the bank.

Headnote 1:  4 C. J. p. 579.  Headnote 2:  37 Cyc. pp. 1067, 1093
(Anno.)  **Headnote 3:**  37 Cyc. p. 1109.  **Headnote 4:**  37 Cyc. p. 838.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER,
Judge.

DECEMBER 14, 1923.

REHEARING DENIED APRIL 9, 1926.

ACTION· in equity to restrain the county treasurer from
collecting taxes levied for the year 1920 against the share-
holders of the First National Bank of Council Bluffs, Iowa (and
seven other banks), and praying that the assessments entered
on the tax books by the county auditor on the 18th day of
February, 1921, prior to the payment of any taxes by appellees,
be canceled for the reasons stated in the bill in equity filed in
the district court.  The defendants demurred to the bill by
general demurrer, stating that the facts pleaded did not en-
title the plaintiffs to the relief sought, or any relief.  The trial
court overruled the demurrer, and the defendants elected to
stand on the demurrer, and refused to plead further.  A de-
cree was entered finding the equities with the plaintiffs, and the
tax assessed was canceled and set aside, and the county treasurer
was enjoined from collecting or attempting to collect the same.
From the decree entered, the defendants appeal.—*Reversed.*

*Frank E. Northrop,* County Attorney, *V. A. Morgan,* and
*C. E. Swanson,* for appellants.

*George S. Wright, Addison G. Kistle,* and *Emmet Tinley,*
for appellees.

DE GRAFF, J.—I.  A motion in this court to dismiss the appeal has been filed by appellees on the ground that the county officials, defendants herein, are no longer incumbents in their respective offices.  If the actions were merely personal actions against the named officials, there would be merit in the contention. The corrections made by the county auditor which constitute the basis of this appeal were made by him in his official capacity. The taxing district is the real party in interest, and Pottawattamie county is a party defendant.  The defendant county auditor is not in privity with his successor in office, nor is he his personal representative.  This is also true of the county treasurer.  The county is a body politic and corporate, and the issue does not involve the personal obligation of an individual to whom a writ might issue.  It is said in *Hines v. Stahl,* 79 Kan. 88:

1. APPEAL AND ERROR: dismissal: expiration of official term.

"Where a public officer is involved in litigation in his official capacity, the expiration of his term does not require a substitution of his successor.  The public is conceived as being the real litigant."

This is a sane rule, and sustains the better practice.  The action in such cases is regarded as against the officer, whoever he may be, and it may proceed through all its stages in all courts in the same manner in which it was commenced; or, if desired, the successor in office, on motion, may be substituted in place of the retiring one.  *Pittsburgh, Ft. W. & C. R. Co. v. Martin,* 53 Ohio St. 386.  The point raised by appellees on motion is overruled.

II.  The record in the instant case presents no issue novel in character.  The appellee bank made its report, as required by Sections 1321 and 1322, Code Supplement, 1913, disclosing its assets and liabilities.  It requested the deduction of certain government securities in determining the assessment for taxation.  The assessor, however, refused to comply with the request, and assessed the shares without reference to government securities, but deducted the actual value of the real estate owned by the bank.

2. TAXATION: levy and assessment: bank stock: correction of error without notice.

The statement furnished to the assessor by the bank *inter alia* disclosed that the capital stock of said bank was $200,000, the surplus $200,000, and the undivided earnings, $30,893.29. This statement also disclosed that the bank held United States government bonds, liberty bonds, war savings stamps, and other government securities, in the sum of $707,591.49. For the reason that the assessor did not deduct the amount invested in government securities, the bank filed written objections before the board of review, and assigned reasons why the government securities should be deducted from the capital, surplus, and undivided earnings of the bank, in making the assessment. The board sustained the objections, and made the deduction. This left nothing upon which an assessment against the shares of the stock of said bank could be made. No appeal was taken by anyone from the action of the board of review. The assessor's books were turned over to the county auditor without any assessment against the shareholders, and in making up the tax list, the auditor did not enter any assessment against the bank or its shareholders, and turned over the tax list on or about December 31, 1920, to the county treasurer, without any assessment against the bank or its shareholders. After the decision in *Des Moines Nat. Bank v. Fairweather*, 191 Iowa 1240, the county auditor, on or about February 18, 1921, corrected the tax list in the hands of the county treasurer, and entered an assessment against the shares of stock of plaintiff bank, based on the capital, surplus, and undivided earnings of the bank, as shown by the statement originally furnished to the assessor by the bank, without allowing any deduction on account of the government securities held by the bank. No notice was given to the plaintiff before making this correction on the tax list. This action on the part of the county auditor was provocative of this suit.

The following contentions are made by appellee: (1) That the auditor had no authority to make the alleged assessments at the time and in the manner stated, without notice, because it is the taking of private property without due process of law, and in violation of constitutional provisions; (2) that the questions presented to the board of review and decided by it constituted an adjudication against the taxing officials,

including the county auditor, and that no appeal was taken by the county auditor; (3) that the said assessment by the county auditor constituted a new assessment, and an assessment on omitted property without notice; (4) that Chapter 63 of the Acts of the Thirty-fourth General Assembly is unconstitutional and void.

This action concerns itself with the validity of an assessment, or the jurisdiction to make one, and not the amount of the tax involved. The first primary question is whether the county auditor had the authority, under Section 1385-b, Code Supplement, 1913, to correct the assessment in question without notice to the bank. Did the assessment involve omitted property, or was it simply an error in mathematical computation, which the county auditor had legal authority to correct? It must be remembered that we are dealing with a mandate found in legislative enactment. The assessments in question are mandatory. Nothing is left to the discretion or judgment of the assessor, board of review, or taxing official. Nothing is left to any subordinate body to determine in what amount, against whom it shall be levied, or the manner or method of making the assessment and the apportionment. The statute itself fixes and determines the base of the assessment, and consequently any correction is mathematical and purely ministerial in its character. The bank itself furnishes the verified statement disclosing the data specified in the statutory requirement. The statute leaves nothing for the assessor or the board of review to do, except to correctly compute the percentage of each shareholder. It is a problem in arithmetic, and the elements or factors of the problem are furnished by the bank. The statute prescribes the method in the solution of the problem.

Under such circumstances, a hearing could be of no avail, and due process of law under such circumstances does not require that the taxpayer "shall have an opportunity to be heard, of which he must have notice." *Londoner v. City and County of Denver*, 210 U. S. 373, 385. Furthermore, the act of the board of review under such circumstances does not constitute an adjudication. It involves no act of judgment or discretion. It is ministerial.

3. TAXATION: levy and assessment: unauthorized review: effect.

The language of the statute must be accorded its ordinary meaning, and neither the assessor nor the board of review may go beyond the statement sworn to by the officers of the bank. From the statement furnished by the bank a computation is made, and if error is committed, it is to be corrected; and this does not constitute a new assessment, or the assessment of omitted property. *First Nat. Bank of Remsen v. Hayes,* 186 Iowa 892. The county auditor may correct an error in the assessment or tax list. The legislative intent, as expressed in Section 1385-b, in authorizing the county auditor to make corrections in the assessment or tax list, does not involve any discretion or judgment on his part. A correction by the board of review is in the same category. Such acts are not judicial in character.

In *Avoca St. Bank v. Burke,* 193 Iowa 1055, we sustained the action of the county auditor in striking an allowance of deduction, on the theory that the prior action of the assessor in making the assessment was an error, within the meaning of Section 1385-b, and that the action of the board of review in failing to correct the erroneous item did not validate it. It may also be said that the action of a board of review, acting in a ministerial capacity, in overruling the findings of the assessor in making the computation for an assessment, also ministerial in character, does not validate the assessment. It is an error committed by the board. Furthermore, the county auditor is authorized to correct errors in assessments after the tax list has passed into the hands of the county treasurer. This is not only the clear implication of the statute, but is sanctioned by the express language therein. The statute reads:

"If such correction or assessment is made after the books have passed into the hands of the treasurer he shall be charged or credited therefor as the case may be." Section 1385-b, Code Supplement, 1913.

There is no claim that any property of the bank's has been omitted from the statement furnished the assessor by the bank. The information required by law was furnished by the bank, and no one questions its correctness. The correction made simply conforms to the statement which the bank itself had

furnished. Under the former statute, the county auditor was authorized to correct errors of commission only. Under the statute as amended by Chapter 47, Acts of the Twenty-eighth General Assembly, the auditor is authorized to correct errors of omission; and this does not require that notice shall be first given, before the correction of an error in mere. computation. The only thing necessary to complete the records in the treasurer's office was to enter the correct answer to the problem, as determined and fixed by the statute. It was merely placing the taxable value of the shares held by each shareholder upon the tax list, and thereafter computing the amount of tax to be paid by each. *First Nat. Bank v. Anderson,* 196 Iowa 587; *First Nat. Bank of Council Bluffs v. City of Council Bluffs,* 182 Iowa 107.

Under the holding in the *Anderson* case, supra, the correction made by the instant county auditor was made during the current year, as judicially defined. The error made by the board of review was apparent on the face of the record, and the county auditor acted under the warrant of statute and the judicial interpretation of this court.

At first blush, a statement made in *Langhout v. First Nat. Bank,* 191 Iowa 957, may seem at variance with our present holding, for it is said:

"The mistakes of assessors and boards of review are final, in the absence of an appeal to the district court."

This is ordinarily true, and this method is ordinarily exclusive. The remedy by appeal as to claims of fraud and discrimination, as well as to errors of judgment, is exclusive. *Polk County v. City of Des Moines,* 70 Iowa 351; *Van Wagenen v. Supervisors,* 74 Iowa 716; *Smith v. City of Marshalltown,* 86 Iowa 516; *Crawford v. Polk County,* 112 Iowa 118; *Wahkonsa Inv. Co. v. City of Fort Dodge,* 125 Iowa 148; *Keokuk & Hamilton Bridge Coal Co. v. Salm,* 258 U. S. 122 (42 Sup. Ct. Rep. 207, 66 L. Ed. 496).

In the instant case, however, an additional remedy is provided, to wit: correction by the county auditor. This is a distinction predicated on the statute. It involves a ministerial act; and in the case at bar, the mandate of the statute negatives discretion.

Lastly, it is contended by appellee that Chapter 63 of the Acts of the Thirty-fourth General Assembly of Iowa, in its operation and as enforced by the taxing officials, violates Section 5219 of the Revised Statutes of the United States. The contention involves: First, the power of the state to assess to the shareholders of a national bank the respective value of the shares of stock therein, in conformity to the provisions of Section 1322, Code Supplement, 1913; and second, the intentional and systematic discrimination in the administration of this statute by the taxing authorities. We have repeatedly and uniformly held that this statute is not unconstitutional nor violative of the Federal statute. *Head v. Board of Review,* 170 Iowa 300; *First Nat. Bank v. City of Council Bluffs,* 182 Iowa 107; *Des Moines Nat. Bank v. Fairweather,* 191 Iowa 1240; same case, 263 U. S. 103 (44 Sup. Ct. Rep. 23, 68 L. Ed. 191).

*4. TAXATION: bank stock: constitutionality of statute.*

In the *Fairweather* case, the Supreme Court of United States said:

"Our concern here is not with a voluntary refusal or intentional omission on the part of the state to tax other moneyed capital of citizens as it taxes national bank shares, but with a submission by the state to superior laws of the United States exempting a part of the other moneyed capital from state taxes. * * * National bank shares are taxable,—made so by the congressional assent. That much or little of the bank's assets consists of tax-exempt securities of the United States does not affect the taxability of the shares * * *. The state taxes such shares without regard to the exempt government securities held by the bank. The capital of private bankers is taxable, save the part invested in exempt government securities. The state taxes all of that capital, save the exempt securities. They are exempt because the United States makes them so, and the state merely respects the exemption. In what is thus done, does the state discriminate against national bank shares and in favor of other moneyed capital in the sense of the restriction? The question is not new; nor can it be regarded as an open one in this court."

Code Section 1322, as amended by Chapter 63, Acts of the

Thirty-fourth General Assembly of Iowa, was rewritten to conform to the holding of the United States Supreme Court in *Home Sav. Bank v. City of Des Moines,* 205 U. S. 503 (51 L. Ed. 901). We have heretofore commented on the judicial interpretation in *Langhout v. First Nat. Bank,* 191 Iowa 957. Since the decision in *Van Allen v. Assessors,* 3 Wall. (U. S.) 573, our Federal Supreme Court has consistently upheld the right of the state to tax shares of stock of national banks in the hands of the individual shareholders. The ownership by banks of government bonds is but an incident to the banking business. Shares of stock are distinct entities, and constitute property; and the taxation of such shares is not taxation of government bonds held by the bank. The statutes of the state of Iowa, in conformity to Section 5219 of the Revised Statutes of the United States, specifically place moneyed capital on the same basis for taxation purposes as the shares of national, state, and saving banks. In other words, the law of Iowa requires that all moneyed capital in the hands of individual citizens which is in competition with the capital of national banks must be taxed on the same basis. Section 1310, Code Supplement, 1913. This statute expressly guards against discrimination, and nothing therein contained authorizes a five-mill levy on other moneyed capital which is in competition with the capital of national, state, and savings banks.

The petition of plaintiffs fails to state a case entitling plaintiffs to relief. Before the suit was begun, it had been decided that the taxing statute is valid, that the shares of stock are taxable, and that the acts upon which the suit is primarily based were valid. With respect to the claim of a systematic and intentional discrimination by the taxing officials, the point or proposition is predicated on the mere allegation of plaintiffs' petition. The unconstitutionality of the statute, as urged by appellants, must find answer in the language and intent of the statute. Its alleged operation or enforcement under the taxing powers, as affecting other moneyed capital, is not a ground for injunctive relief, under the instant record.

The demurrer to the petition of plaintiffs should have been sustained.—*Reversed.*

EVANS, STEVENS, ARTHUR, FAVILLE, and VERMILION, JJ., concur.