FIRST NATIONAL BANK OF MONTEZUMA, Appellee, v. BOARD OF REVIEW OF MONTEZUMA et al., Appellants.

**TAXATION:** Assessment—Review—Appeal as Exclusive Remedy. Appeal to the district court from an order by the board of review is the proper procedure to determine which of different tax levy rates should be applied to taxable property.

**TAXATION:** National Bank Shares—"Moneyed Capital" Defined. Purchase-money mortgages on real estate, mortgages purchased and held as an investment by an individual, and individual bank deposits, may not be deemed "moneyed capital," within the meaning of the Federal statutes (Sec. 5219, U. S. Rev. Stat.), in the absence of proof that such capital is employed in *competition* with the business of a national bank.

Headnote 1: 37 Cyc. p. 1114. Headnote 2: 37 Cyc. p. 836.

*Appeal from Poweshiek District Court.*—D. W. HAMILTON, Judge.

JANUARY 20, 1925.

REHEARING DENIED APRIL 8, 1925.

APPEAL by a board of review and county from an order by the district court reducing the amount of a tax levied and as-

sessed against the shares of stock of a national bank. The assessment in question in this case was made as of January 1, 1922. Appellee filed objections to the assessment as made, before the board of review, and a hearing was had thereon, and the board of review affirmed the assessment as originally made. An appeal was taken to the district court, and on hearing, the assessment was reduced.—*Reversed.*

*Talbott & Talbott,* for appellant Poweshiek County.

*C. F. Dickson,* for appellant board of review.

*Frank Bechly, J. G. Shifflett, Beyer & Manly, Boyd & Boyd, Havner, Hatter & Harned,* and *J. W. Carr,* for appellee.

Faville, C. J.—I. Appellants contend that appellee could not raise the questions involved in this case by appeal from the board of review to the district court. No question of omitted property is involved, nor it is claimed there was any error in the valuation fixed on appellee's property; and the sole question is as to the correct amount of the tax and the manner of ascertaining the same.

1. Taxation: assessment: review: appeal as exclusive remedy.

We have recently had occasion to review and pass upon the identical question raised by appellant as to whether appeal is a proper remedy in such a case, and collected and reviewed the authorities in *Griswold Land & Credit Co. of Manson v. County of Calhoun,* 198 Iowa 1240. On this point the instant case is controlled by our opinion in the cited case, which determined that, under the circumstances as shown in this record, appeal is the proper remedy.

II. The evidence shows that the capital, surplus, and undivided profits of appellee bank, on January 1, 1922, amounted to $112,047.91. The amount of capital invested in real estate amounted to $36,457.91, leaving $75,590 as the net value of the capital, surplus, and undivided profits subject to tax. Appellee's contention is that its shares of stock should have been assessed at five mills on the dollar, the same as moneys and credits were assessed within the taxing district. The shares were orig-

2. Taxation: national bank shares: "moneyed capital" defined.

inally assessed at the regular millage rate within the taxing district, upon twenty per cent of the actual value thereof, which was ascertainable by deducting the amount invested in real estate from the total amount of capital, surplus, and undivided earnings. The trial court reduced the assessment to five mills on the dollar.

Upon the trial of the cause, ninety-seven assessment rolls were introduced, showing assessments of moneys and credits within the taxing district. Twenty-one of the taxpayers so assessed were produced as witnesses upon the trial of the case. Of this number twelve held purchase-money mortgages only. Nine of them held purchase-money mortgages and money which they used in making real estate and other loans as an investment; and the record shows that some of these loans were made entirely outside of the taxing district in which the taxpayer lived. In seventy-six of the assessment rolls which were offered in evidence, there was no showing whatever as to the character of the moneys and credits that were assessed, nor how the same were obtained by the taxpayer. The ninety-seven assessment rolls introduced in evidence showed a total of $1,336,730 assessed as moneys and credits. The total amount of moneys and credits regarding which evidence was offered, and which were assessed to twenty-one taxpayers, aggregated $338,600. The evidence in regard to this disclosed that $200,700 of this amount represented purchase-money mortgages; $4,500 was money deposited in banks; $20,000 represented a loan secured by a bank for a customer on lands lying outside the taxing district; $26,900 represented mortgages made on lands outside the taxing district, and in territory in which it appears appellee bank transacted no business whatever; $60,350 represented real estate loans in which the taxpayers had invested their own funds, and in which the mortgages held by the taxpayers were security for the funds so invested; $26,150 represented other loans made by the taxpayers to other individuals, which loans were mostly secured by chattel securities. It appears that all of the two last named classes of loans were so made by the individuals as an investment, and they were not made in the conduct of any loaning business, but were the investment of individual funds in securities of the character named, by individual transactions, the taxpayer re-

ceiving the interest on such investment. The remaining seventy-six assessment rolls which were offered in evidence, showing assessments for moneys and credits against taxpayers within the taxing district, were wholly unexplained.

The essential and vital question for our determination is in regard to the proper assessment of the shares of stock of appellee. The contention of appellee is that its shares of stock should be assessed and taxed on exactly the same basis as moneys and credits were taxed within the taxing district for the year 1922 : that is, on the basis of five mills on the dollar of the value of said stock, after deducting the amount invested by the bank in real estate.

Appellee, being a national bank, comes within the purview of Section 5219 of the Revised Statutes of the United States. Said section is in part as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere."

In connection with said section, it is necessary that we take into consideration certain statutes of this state pertinent to the matter under consideration. Code Supplement, 1913, Section 1310, is as follows:

"Moneys, credits and corporation shares or stocks, except as otherwise provided, cash, circulating notes of national banking associations, and United States legal tender notes, and other notes, and certificates of the United States payable on demand, and circulating or intended to circulate as currency, notes, including those secured by mortgage, accounts, contracts for cash or labor, bills of exchange, judgments, choses in action, liens of

any kind, securities, debentures, bonds other than those of the United States, annuities, and corporation shares or stocks not otherwise taxed in kind, shall be assessed, and, excepting shares of stock of national, state and savings banks and loan and trust companies, and moneyed capital as hereinafter defined, shall be taxed upon the uniform basis throughout the state of five mills on the dollar of actual valuation, same to be assessed and collected where the owner resides. The millage tax here provided for shall be in lieu of all other taxes upon moneys and credits and shall be levied by the board of supervisors, placed upon the tax list and collected by the county treasurer, and the amount collected in the various taxing districts of the state shall be divided between the various funds upon the same pro-rata basis as other taxes collected in such taxing district are apportioned. All moneyed capital within the meaning of Section 5219 of the Revised Statutes of the United States shall be listed and assessed against the owner thereof at his place of business, and if a corporation at its principal place of business, at the same rate as state, savings, national bank and loan and trust company stock is taxed, in the same taxing district, and at the actual value of the moneyed capital so invested. The person or corporation using moneyed capital in competition with bank capital shall furnish the assessor upon demand a full and complete itemized sworn statement showing the amount of moneyed capital so used.''

Code Supplement, 1913, Section 1322, is in part as follows:

''Shares of stock of national banks and state and savings banks, and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located. At the time the assessment is made the officers of national banks and state and savings banks and loan and trust companies shall furnish the assessor with lists of all the stockholders and the number of shares owned by each, and the assessor shall list to each stockholder under the head of corporation stock the total value of such shares. To aid the assessor in fixing the value of such shares, the said corporation shall furnish him a verified statement of all the matter provided in Section 1321 of the Supplement to the Code, 1907, which shall also show separately the amount of the

capital stock and the surplus and undivided earnings, and the assessor from such statement shall fix the value of such stock based upon the capital, surplus, and undivided earnings. In arriving at the total value of the shares of stock of such corporations, the amount of their capital actually invested in real estate owned by them and in the shares of stock of corporations owning only the real estate (inclusive of leasehold interests, if any) on or in which the bank or trust company is located, shall be deducted from the real value of such shares, and such real estate shall be assessed as other real estate, and the property of such corporation shall not be otherwise assessed.''

Code Supplement, 1913, Section 1322-1a, is as follows:

''For the purpose of placing the taxation of bank and loan and trust company stock and moneyed capital as nearly as possible upon a taxable value relatively equal to the taxable value at which other property is now actually assessed throughout the state as compared with the actual value thereof, it is hereby provided that state, savings and national bank stock and loan and trust company stock and moneyed capital shall be assessed and taxed upon the taxable value of twenty per cent of the actual value thereof, determined as herein provided, which twenty per cent of the actual value shall be taken and considered as the taxable value and shall be taxed as other property in such taxing district.''

We are required to construe these various statutes and apply the same in the light of the facts of this case, as above set forth. Our ultimate inquiry is whether, under the facts of this case, the property taxed as ''moneys and credits'' within the taxing district was properly so taxed, or whether it was in fact ''moneyed capital,'' within the terms of Section 5219 of the Revised Statutes of the United States, and should have been taxed as such. If it is ''moneys and credits,'' then it was properly taxed, and appellee could not complain. If said property was ''moneyed capital,'' within the meaning of said Section 5219, then it was improperly taxed, and as a result, Section 5219 was violated, and appellee was discriminated against, and had just cause for complaint.

Under Code Supplement, 1913, Section 1310, moneys and credits shall be taxed upon a uniform basis throughout the state,

of five mills on the dollar of actual valuation. The same section of the statute provides that:

"All moneyed capital within the meaning of Section 5219 of the Revised Statutes of the United States shall be listed and assessed against the owner thereof at his place of business, * * * at the same rate as state, savings, national bank and loan and trust company stock is taxed, in the same taxing district, and at the actual value of the moneyed capital so invested."

Code Supplement, 1913, Section 1322, as above quoted, provides for the assessment of stock in national banks to the individual stockholders, and the manner in which the value of the stock is to be ascertained; and Code Supplement, 1913, Section 1322-1a, provides that national bank stock and moneyed capital shall be assessed and taxed upon the taxable value of twenty per cent of the actual value thereof, which shall be taken and considered as the taxable value, and shall be taxed as other property in said taxing district.

It is very apparent from the provisions of the statutes of this state that the legislature has provided for the classification of certain property as moneys and credits, and for the taxation of all property so classified at the uniform rate throughout the state of five mills on the dollar of the actual value of such moneys and credits. It is likewise equally apparent that the legislature has provided for the taxation of the shares of stock of national banks in conformity with the provisions of Section 5219 of the Revised Statutes of the United States, and that the method and rate of taxation of the shares of stock in a national bank are entirely different from the method of taxation of moneys and credits. Moneys and credits are assessed at five mills on the dollar of their actual value. The shares of stock in a national bank are assessed by the determination of the assessable value, by the process of ascertaining the capital, undivided profits, and surplus of the bank, and deducting therefrom the amount invested by the bank in real estate, and then fixing the taxable value of the property of the bank at twenty per cent of the net amount so ascertained; and this twenty per cent of the said amount so ascertained, which becomes the basis of taxable value, is taxed as other property in the said taxing district, and at the rate at which other property is so taxed. It therefore inevitably follows

that the shares of stock of a national bank are not to be assessed as moneys and credits, nor are moneys and credits to be assessed as are the shares of a national bank.

There is, however, a third classification recognized by the act of Congress and by the legislature of this state, and that is the classification of property designated in the act of Congress as "other moneyed capital" in the hands of individual citizens of such state; and the same term is used in the statutes of this state, Code Supplement, 1913, Section 1322-1a, wherein it is provided that state, savings, and national bank stocks are "moneyed capital," and shall be assessed and taxed upon the taxable value of twenty per cent of the actual value thereof. Therefore it is clear that both the act of Congress and the statute of this state recognize that there is a class of property subject to tax which is designated as "moneyed capital;" and both the Federal and state acts provide that the shares of national banks shall be taxed in the same manner that moneyed capital is taxed. It is perfectly obvious that the legislature recognized the three classes of property.

Concededly, the shares of stock in appellee bank must be assessed, under the act of Congress and the statutes of this state, in the same manner that other moneyed capital in the hands of individual citizens of the state is taxed. The real question in this case at this point is whether or not the property which was classified and assessed as moneys and credits, within the taxing district in question, was, in fact, "moneyed capital." If it was moneyed capital, then it should have been taxed as such, and at an amount to be determined by ascertaining twenty per cent of its actual value, and then taxing it the same as other property in the taxing district. It is conceded that the property taxed as moneys and credits was not so assessed, but was assessed on the basis of five mills on the dollar of its value. If it is moneyed capital, this assessment was erroneous, and was discriminatory, in so far as appellee is concerned.

The courts, both Federal and state, have frequently had before them the question of what is "moneyed capital," within the meaning of Section 5219 of the Revised Statutes of the United States. We quite recently had occasion to review the decisions of the Supreme Court of the United States in defining

the term "moneyed capital," as used in Section 5219 of the Revised Statutes. The cases are discussed, with lengthy quotations, in *First Nat. Bank of Guthrie Center v. Anderson,* 196 Iowa 587. A re-examination of the Federal authorities is convincing that, for more than fifty years, the Supreme Court of the United· States had adhered to the general rule that the term "moneyed capital," as used in Section 5219 of the Revised Statutes, meant capital employed in carrying on a business in competition with the business of a national bank. As said in *First Nat. Bank of Aberdeen v. Chehalis County,* 166 U. S. 440:

"The main purpose, therefore, of Congress in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on *a similar business and operations and investments of a like character.*" (The italics are ours).

In *First Nat. Bank of Aberdeen v. Chehalis County,* supra, the court recognizes the fact that moneyed capital may include shares of stock owned by individuals in all enterprises in which the capital employed in carrying on its business is money where the object of the business is the making of profit by its use as money. The case also recognizes that the term may include money in the hands of individuals employed in a similar way. The case is also authority for the conclusion that:

"Money invested in corporations or in individual enterprises that carry on the business of railroads, of manufacturing enterprises, mining investments, and investments in mortgages, does not come into competition with the business of national banks, and is not, therefore, within the meaning of the act of Congress."

Numerous other decisions of the Supreme Court of the United States recognize substantially the same general rule. Some of the cases are cited in the *Anderson* case, supra, and it is unnecessary that we review them at this time. The conclusion deducible from them is that the term "moneyed capital," as used in Section 5219 of the Revised Statutes, "does *not* include capital which does not come into competition with the business of national banks."

It is contended that the Supreme Court of the United States somewhat broadened the definition of the term "moneyed capital," in the case of *Merchants' Nat. Bank v. Richmond,* 256 U. S. 635. In the opinion in that case it is said that the words "moneyed capital" "include not only moneys invested in private banking, properly so called, but investments of individuals in securities that represent money at interest and other evidences of indebtedness such as normally enter into the business of banking." The court concludes, however, that it is "moneyed capital in the hands of individual citizens invested in loans or securities for the payment of money, either for permanent or temporary purposes, *where such moneyed capital comes into competition with that of national banks,*" that is within the purview of Section 5219 of the Revised Statutes. (The italics are ours.)

This case does not dispute the established rule of the Supreme Court of the United States that it is moneyed capital in competition with a national bank that is embraced within the terms of the statute, and the case recognizes that it is a question of fact as to whether or not the so-called moneyed capital is of a kind which substantially and actually is in competition with the business of a national bank. It has been contended that the decision in the *Richmond* case overruled the decisions of the Supreme Court of the United States that had stood for many years, and established a new rule. It is to be noticed that, in the *Richmond* case, the court said:

"It is also shown by evidence *without dispute* that moneyed capital in the hands of individuals invested in bonds, notes, and other evidences of indebtedness comes into competition with the national banks in the loan market."

It therefore appears that in that case the court was dealing with a situation where it affirmatively appeared from the evidence in the case, and without controversy or dispute, that the bonds and other securities of individuals within the taxing district did in fact come in competition with the business of the national bank. Dealing with such a situation, and on such a record, the court held that moneyed capital so coming in competition with a national bank as a matter of fact was within the provisions of Section 5219 of the Revised Statutes. The sixty-

seventh Congress (Ch. 267, page 1499) took cognizance of the situation and of the contention that the *Richmond* case established a new rule and departed from the one that had been adhered to by the Supreme Court of the United States for a long period of years, and amended Section 5219, and provided as follows:

"In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of the individual citizens of such state coming into competition with the business of national banks; *provided*, that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

In view of the facts upon which the *Richmond* case was determined, and the record in that case, and in consideration of the amendment of said statute by Congress, we are constrained to hold that there has been no substantial departure from the rule originally established by the Supreme Court of the United States, that the words "moneyed capital," in Section 5219 of the Revised Statutes, apply to moneyed capital of a business enterprise or an individual which is used in competition with the business of a national bank, and that it does not apply to investments in bonds, securities, or other evidences of indebtedness where said investments are not in competition with the business of national banks. It certainly cannot be said that a landowner in Iowa who sells his farm and takes back a purchase-money mortgage representing a part of the purchase price of said real estate is the owner of moneyed capital in competition with the business of a national bank. Nor can it be contended that a citizen of the state who deposits money in a bank and receives a time certificate of deposit therefor, bearing interest, is the owner of moneyed capital in competition with a national bank. Nor can it be said that the citizen of this state who purchases and owns a real estate mortgage as an investment of funds which he may own, by such a transaction becomes the owner of moneyed capital in competition with the business of a

national bank; and yet such securities and evidences of indebtedness are property subject to classification as moneys and credits, and are taxable as such under the laws of this state.

The evidence in this case shows that the various items that were classified as moneys and credits and assessed as such within the taxing district were of the general character of purchase-money mortgages on real estate, or of mortgages purchased and held as an investment by an individual, or are bank deposits; and the evidence fails to show that any of said items were moneyed capital in competition with the business of appellee bank. In other words, the record in this case discloses, as a matter of fact, that the items that were assessed and taxed as moneys and credits within the taxing district were property so assessed and taxed; and the record is barren of any evidence to show that said moneys and credits or any of the specific items thereof were moneyed capital in competition with the business of appellee.

As before stated, it may readily be conceded that there may be moneyed capital in the hands of corporations, partnerships, or individuals that is employed in competition with the business of a national bank; and when said moneyed capital is so employed, then it shall be taxed the same as the shares of a national bank are taxed, under the provisions of Section 5219. But the record in this case fails to show that there is, within this taxing district, any moneyed capital employed in competition with appellee bank that is not taxed exactly on the same basis and in the same manner that the shares of stock in said bank are taxed. The fact that moneys and credits, properly classified as such, are taxed under the statute as moneys and credits, without a showing that they are in fact moneyed capital engaged in competition with a national bank, cannot be made the basis for holding that the bank is improperly taxed.

We reach the conclusion that, upon the record in this case, the trial court was in error in holding that there was moneyed capital within the taxing district which was taxed in any different manner than the shares of appellee bank were taxed. Upon the record made, the original assessment levied against appellee was correct, and the action of the district court in modifying

and reducing the same was erroneous. It therefore follows that the decree appealed from must be reversed.

It is so ordered.—*Reversed.*

EVANS, STEVENS, ARTHUR, DE GRAFF, VERMILION, and AL-BERT, JJ., concur.