First National Bank of Newton, Appellee, v. Board of Review of Newton et al., Appellants.

**TAXATION:** Assessment—Error—Exclusive Procedure to Correct.
1 The exclusive remedy for the correction of an erroneous assessment is (1) by making complaint to the board of review, and (2) by appeal to the district court in case of an adverse ruling.

**TAXATION:** Assessment—Moneys and Credits as "Moneyed Capital." Promissory notes, secured or unsecured by mortgages, representing loans of the private funds of individuals who maintain no offices and who are not engaged in a private banking business, may not be deemed "moneyed capital," within the meaning of Sec. 5219, Revised Statutes of the United States, in the absence of

evidence that such funds came into competition with the business of the national banks of the community in question.

**Headnote 1:** 37 Cyc. pp. 1080, 1114.    **Headnote 2:** 37 Cyc. p. 1034.

*Appeal from Jasper District Court.*—H. F. WAGNER, Judge.

## JUNE 25, 1925.

APPEAL by a board of review and county from an order by the district court reducing the amount of a tax levied and assessed against the shares of stock of a national bank. The assessment in question in this case was made as of January 1, 1922. Appellee filed objections to the assessment as made, before the board of review, and a hearing was had thereon, and the board of review affirmed the assessment as originally made. An appeal was taken to the district court, and on hearing the assessment was reduced.—*Reversed.*

*George A. Campbell,* City Solicitor, *Hugo C. Schulz,* County Attorney, and *Henry Silwold,* for appellants.

*Cross & Hammill* and *Korf & Korf,* for appellee.

FAVILLE, C. J.—I.    Appellant argues that the appeal from the board of review was not the proper remedy.

1. TAXATION: assessment: error: exclusive procedure to correct.

This question is settled by *Griswold Land & Credit Co. v. County of Calhoun,* 198 Iowa 1240, and by *First Nat. Bank of Montezuma v. Board of Review,* 199 Iowa 1124.

II.    The cause was submitted to the trial court upon a stipulation of facts. It appears therefrom that the capital stock of appellee on January 1, 1922, was $100,000, and that at said time it had a surplus of $50,000 and undivided

2. TAXATION: assessment: moneys and credits as "moneyed capital."

profits of $7,877.61. It appears that the deposits of said bank on that date were $840,338.87, of which deposits $433,309.68 were time deposits, and that the remainder of its deposits were commercial deposits by individuals, firms, corporations, and banks. It also appears that the amount of the capital stock of appellee actually invested in real estate on January 1, 1922, was $145,649.17.

It appears that appellee conducts a general commercial banking business, such as is ordinarily and usually conducted by banks of a similar character in cities like Newton in the state of Iowa, and that in connection with its business it had loans secured by real estate, aggregating $90,545, which bore interest at different rates, and which loans were due at various dates, but which were originally made for terms of from three to five years.

It also appears from the agreed statement of facts that, on January 1, 1922, there were assessed by the taxing authorities of Jasper County, Iowa, moneys and credits in the hands of individual citizens of said county in the total sum of $11,719,840, of which said sum $3,190,083 was assessed against individual citizens residing in said city of Newton.

No specific evidence was offered as to the particular character of the moneys and credits so assessed, but it is stipulated that a large portion of said moneys and credits consisted of money loaned by individual citizens and individuals of Newton and vicinity upon promissory notes, some of which were secured by real estate mortgages, and some of which were unsecured; that a portion of said moneys and credits represented money invested in loans or in securities of a permanent or temporary character, which were held by the owners thereof with a view to sale or repayment and reinvestment. It is also admitted that all of the parties who were so assessed as the owners of moneys and credits maintained no offices for the purpose of loaning money, and were not engaged in a private banking business, and that they loaned their own money. There is neither stipulation nor proof that said moneys and credits came into competition with appellee.

It also appears that all of the moneys and credits assessed as such by the banking authorities were assessed at the uniform rate of 5 mills on the dollar, for the year 1922. It likewise appears that the capital stock of appellee bank was assessed at the sum of $2,446, which amount represented 20 per cent of the full amount of the capital, surplus, and undivided profits of said bank on January 1, 1922, after deducting therefrom the amount of said capital invested in real estate. The said assessment was made upon said valuation of $2,446 at 224.26 mills

on the dollar. The trial court found that said assessment was erroneous, and that the shares of stock in appellee bank should be assessed by deducting from its capital, surplus, and undivided profits the amount invested in real estate, and that the remainder so obtained should be assessed at the rate of 5 mills on the dollar.

. As previously stated, the record does not show the exact character of the particular moneys and credits which were so taxed to individual taxpayers within the taxing district. But it does appear from the record that the moneys and credits so taxed, in a general way, consisted of loans by private parties of their own funds to individuals, and the ownership of notes secured by mortgages on real estate, and other similar securities; and that none of the parties who were so taxed as being the owners of moneys and credits, were loaning any except their own funds: and it affirmatively appears that they were not engaged in the banking business, either as private bankers or otherwise, and maintained no offices for the conduct of any business involving said moneys and credits.

The questions presented by the appeal in this case are determined by the opinion in *First Nat. Bank of Montezuma v. Board of Review,* supra.

Under the facts in this case, there is a failure of proof that the items of property taxed as moneys and credits to various taxpayers within the taxing district were not properly so classified and taxed. In other words, there is no showing from the stipulated facts that the property taxed as moneys and credits was moneyed capital in competition with appellee bank. It was properly assessed as moneys and credits. It should not have been assessed as moneyed capital in competition with appellee.

It is unnecessary to repeat the discussion in the *Montezuma* case. The facts of the instant case do not differentiate it from the *Montezuma* case.

In *Jasper County Sav. Bank v. Board of Review* (Iowa), 202 N. W. 387 (not officially reported), as in the case at bar, the cause was submitted on a stipulation of facts. It is true that the stipulation in each case uses the term "moneyed capital," but the recital is that the so-called "moneyed capital" was "in the form of money and credits in the hands of indi-

vidual citizens of Jasper County.'' The recited facts, as distinguished from the legal conclusions of the stipulation in each of said cases, disclose that the property assessed as moneys and credits was properly so classified and assessed. There is nothing in the stipulation in either case, by legal conclusion or statement of fact, showing that the property assessed as moneys and credits came into competition with the business of appellee, within the meaning of Section 5219 of the Revised Statutes.

The judgment of the trial court in reducing the assessment of appellee was erroneous, and must be, and it is,—*Reversed.*

EVANS, STEVENS, ARTHUR, DE GRAFF, and VERMILION, JJ., concur.

ALBERT, J., dissents.