SECURITY TRUST & SAVINGS BANK, Appellant, v. B. F. MITTS, County Treasurer, Appellee.

FIRST NATIONAL BANK of Essex, Appellant, v. B. F. MITTS, County Treasurer, Appellee.

H. E. Ross, Conservator of Shenandoah National Bank, Appellant, v. B. F. MITTS, County Treasurer, Appellee.

Nos. 42707–42709.

JUNE 21, 1935.

REHEARING DENIED SEPTEMBER 17, 1935.

Ferguson & Ferguson, for appellants.

B. J. Flick and Willis A. Glasgow, County Attorney, for appellee.

HAMILTON, J.—The legal questions involved in each of the three cases are identical; hence, the cases were by agreement consolidated and are so presented on this appeal. As we view the record presented, the determination of two legal questions which arise under the issues joined will settle the controversy between the parties to this litigation. (1) Was there a legal assessment? If this question is answered in the negative that ends the controversy, for without a legal assessment there is no basis for a valid tax. (2) If there was a legal assessment, the next question which naturally arises under the issues in this case is, was there a wrongful classification of the capital stock for the purpose of taxation, as compared with other moneyed capital used in competition with the investments of the capital of said banks, resulting in unjust discrimination, and, if so, what is the proper remedy to be pursued by the plaintiffs?

Counsel for appellants, in argument, naturally and logically, first present to this court the matter of the legality of the assessment, and we will accordingly give first consideration to this question. The facts are not in conflict as to the way and manner in which the assessment was made. These banks are all located in Page county, Iowa. One of them is a state bank, and the other two are national banks, all duly organized according to law and are engaged in a general banking business. The Security Trust & Savings Bank and the Shenandoah National Bank are both located in the city of Shenandoah, and are both in the same taxing district. The First National Bank of Essex is located in the town of Essex, and is in a separate taxing district. While there were two different assessors, the method pursued in the making of the assessment by each and both of said assessors was quite similar.

The matter of assessment for taxation of banks is regulated by statute and occupies a separate chapter of the Code, chapter 333 of the 1931 Code of Iowa (section 6997 et seq.), the provisions of which are mandatory and leave little or no room for the exercise of judgment or discretion on the part of the taxing officials, and the method pointed out by this chapter was attempted to be followed by the assessors in assessing the capital stock of the three plaintiff banks. Uniform blanks prepared by the state board of assessment and review under the provisions of the statutory law of this state were furnished to the county auditor of Page county, as well as to all other county auditors in the state, to be turned over by the county auditor to the assessor of each taxing district, for use of the assessor in making his assessments of the capital stock, surplus, and undivided profits of banks. These blanks were furnished by the assessors to the plaintiff banks and were properly executed, signed, and sworn to by the banks, strictly in accordance with the statutory law. No question is raised as to this matter. The blank form used is one sheet of paper, folded so as to constitute four unnumbered pages. The first page contains a statement of assets and liabilities, and the legal description of real property owned by the bank. The second page contains the names, residences, number of shares and par value of the shares of each of the shareholders of the capital stock of the bank, and at the bottom of this second page is the verification by the officers of the bank. On the third page is a blank form for the use of the assessor in making the

assessment. In the assessment of the First National Bank of Essex, this page is as follows:

"NATIONAL, STATE OR SAVINGS BANKS OR LOAN AND TRUST COMPANIES.

"Abstract showing the taxable value of the Capital Stock and Surplus and Undivided Profits (after having deducted the amount of Capital Stock and Surplus and Undivided profits actually invested in real estate) of the First National Bank, located at Essex, in the County of Page and State of Iowa; and the amounts thereof to be assessed for taxation to each shareholder for the year 1932, as herein specified.

"The following information is to be filled in by your assessor and with the assessment roll is to be passed upon by the Board of Review.

"In those cases where the amount actually invested in 'Real Estate' is *not in excess* of the amount of 'Capital Stock' itself, then fill out Form No. 1 below.

"In those cases where the amount actually invested in 'Real Estate' exceeds the amount of 'Capital Stock' itself use Form No. 2 below.

FORM No. 1

"(Where said 'Real Estate' is EQUAL TO or LESS THAN Bank's 'Capital Stock.')

"As shown by statement rendered by the Bank as of January 1, 1932.

1. Amount of Capital Stock .................................................. $50,000.00
2. Less amount of Capital Stock actually invested in real estate owned by said bank .................................................. 5,000.00
3. Net actual value of Capital Stock after deducting real estate .................................................. 45,000.00
4. Said net value of Capital Stock reduced to 50% comparable with the assessed value of real estate in this taxing district to its actual value .................................................. 22,500.00
5. Taxable value of Capital Stock to be assessed to the individual shareholder one-fourth of actual value. (That is, one-fourth of amount under No. 4 above) .................................................. 5,625.00
6. Total of bank's Surplus and Undivided Profits to be taxed at full value to individual shareholders as moneys and credits .................................................. 51,959.28

At the bottom of this page is a printed certificate worded as follows: "I hereby certify the foregoing to be the true taxable value of the capital stock and surplus and undivided profits of

the First Natl. Bank of Essex, Iowa, for the year 1932, as shown by statement rendered by the bank after deducting real estate only as provided in Section 7002, Code 1931.

"——————————, Assessor."

The statements used by the assessor in assessing the other two plaintiff banks are the same in form; the figures, of course, being different according to the capital stock, etc., of the particular bank in question.

These forms, which will be referred to as bank statements, were furnished to the officials of each of the three banks by the assessors of the districts in which the banks are located. They were properly executed and returned to the assessors. In addition to filling out the first two pages, the officials of the banks, for the purpose, no doubt, of convenience to the assessors, and as an aid and assistance to them, filled out completely the third page of each statement, or the page to be filled in by the assessors. The assessors of both taxing districts testified that they examined these bank statements and accepted and adopted them as made out by the officials of each of said banks, and that they made no changes in any of the figures; that they returned said bank statements, as the assessment of the capital stock, surplus and undivided profits of each of said banks, along with the assessment rolls of their taxing districts, to the local board of review at its regular meeting in April, and that the same were considered along with the assessment rolls, were read over to the board of review and considered by said board, and no corrections or changes therein were made by said board; that thereafter, said bank statements with the assessment rolls, duly verified by the assessors as complete assessments of their assessing districts, were returned with their assessors' books to the county auditor of Page county. It is undisputed that the certificate at the bottom of page 3 of each of said bank statements was not signed by the assessor. The officials of the respective plaintiff banks testified that they prepared said statements. All testified, in substance, that they knew when they made out these bank statements what they were to be used for, and that the taxable values of the capital stock which were set down by them on these forms for the use of the assessors would constitute the bases of taxation of the capital stock and undivided profits to be assessed against the stockholders of the

respective banks, and that the consolidated levy would be applied to the capital stock and a six-mill moneys and credits levy would be applied to the surplus and undivided profits.

The county auditor testified that she received said bank statements with the assessment rolls and the assessors' books, and that she made up the official tax list from the assessment rolls and the bank statements and the assessors' books, and that the sworn statements by the banks, returned with the assessment rolls, were used and considered by her as a part of the assessment records in her office, along with the assessment rolls and the assessors' books, and from all of these she prepared the permanent tax list. In the case of the First National Bank of Essex, these records of the assessor were returned to her office on April 13, 1932, and in the case of the other two banks the assessment rolls and the assessors' books were marked filed and returned on April 28, 1932, and the bank statements of said banks were marked filed in the auditor's office June 21, 1932. It is undisputed in the record that there was no entry of any assessment of the capital stock of said banks on the assessors' books at the time they were received by the auditor; that some time subsequent to the date she received the respective bank statements from the assessors, she transposed from the bank statements to the assessors' books the figures contained on the third page of each of said bank statements, and thereafter prepared the tax list, made up from the data contained in the assessors' books, assessment rolls, and bank statements, and delivered the same to the treasurer of the county in December of 1932; that she made no change in any of the figures, except in one instance where she corrected a mathematical error, about which there is no question raised.

Therefore, the actual figures constituting the basis to which the tax levies were applied in determining the amounts of the tax due are the identical figures set down by the officials of the plaintiff banks themselves, accepted and adopted as correct by the assessors. It should be noted that no question is raised with reference to the correctness of the valuations. Appellants' complaints are definitely that the third pages of the bank statements were not signed and verified by the assessors, that the valuations were not made by the assessors, that the figures were not carried onto the regular assessment rolls or assessors' books by the assessors, and therefore the taxpayers did not have the inde-

pendent judgment of the assessors as to the value of the property assessed, and that the proper entries on the assessment rolls and assessors' books were not made in accordance with the law, and hence no valid assessment was ever made.

■■■ We find ourselves unable to agree with appellants' contention that there was no legal assessment made. It is true that without an assessment in some manner there can be no valid tax, no debt or obligation from the taxpayer. Galusha v. Wendt, 114 Iowa 597, at page 604, 87 N. W. 512; Woodbury County v. Talley, 153 Iowa, page 28, 129 N. W. 967. Appellants lay great stress upon some language found in the case of Smith v. McQuiston, 108 Iowa 363, 364, 79 N. W. 130, 131, wherein the court used this language:

"An assessment would seem to require a decision or conclusion upon the assessor's part, as well as an entry of the amount by him."

In that case there was a dispute as to the amount of the assessment. The assessor made the assessment and delivered to the taxpayer a copy, showing he had assessed him with a $310 valuation, but through a clerical error in copying, it appears on the tax book as $3,150. The court found that the assessor had never agreed upon the amount and never in fact assessed the taxpayer with the amount which was finally found upon the tax books. Therefore, there was no assessment. This case involved the assessment of real estate and not bank stock.

The case of Snell v. City of Fort Dodge, 45 Iowa 564, involved the question of the legality of an assessment. One Sergeant was employed by the assessor and actually made the assessments, fixed the valuations of the property, and then submitted the same to the assessor from time to time for his approval. This court said:

"It is immaterial by whom the clerical duty of listing the property was done, for in no manner could that affect the taxpayer injuriously. It is true that Sergeant fixed the values of the property in the first instance, but the assessor had a supervision over his work, examined it from time to time, and finally adopted it as his act. Conceding that the taxpayer is entitled to have the best judgment of the legally elected assessor in determining the value of his property, it by no means appears that

he has not had such judgment exercised. It is not pretended that the judgment of the assessor was in any manner influenced by what was done by Sergeant.''

Likewise, in the case of Reed v. City of Cedar Rapids, 138 Iowa 366, 367, 116 N. W. 140, 141, which was a suit in equity to enjoin the collection of taxes, the basis of the suit was that the assessment was invalid because not made by the city assessor himself. Plaintiff recovered in the court below and this court reversed the case and said:

''The evidence shows without conflict that some of the property returned for assessment in the years involved was listed and valued by an assistant, but it is also as certainly shown that the lists were carefully examined by the assessor in person, and that the values affixed to the several properties were either approved by him or changed to correspond with his own judgment. While it is true that the property owner is entitled to the judgment of the assessor as to the value of his property, it is also true that the statute does not require the assessor to personally list all property. Such work is clerical, and even where the assistant fixes the value in the first instance, the assessment is not invalid if the assessor afterward examines the valuation so made and adopts it as his act. Snell v. City of Ft .Dodge, 45 Iowa 564; Meservey v. Webster County, 46 Iowa 702; Burnham v. Barber, 70 Iowa 87, 30 N. W. 20.''

Similar language was used in the case of McCallum v. Board of Review, 178 Iowa 468, 159 N. W. 1036, 1039, wherein the court said:

''It is also argued for appellant that a deputy assessor is without authority to make an assessment. In the sense that he has no authority independent of the assessor the objection may be correct, but we see no reason why he may not perform the functions of the office as assessor subject to the approval and confirmation of his principal, or, in other words, the assessor may avail himself of the assistance of his deputies and adopt and return the results of their labor as his own.''

We refer to the language in these three cases from which we have just quoted to show that the assessor could legally and properly adopt as his own the figures set down by the bank

officials on the sheet which the law contemplated should be filled out and returned by the assessor.

It is likewise true, and must be conceded, that the taxing power can be exercised only in accordance with the forms of law. Worthington v. Whitman, 67 Iowa 190, 25 N. W. 124; Ludeman v. County of Cerro Gordo, 204 Iowa 1100, 216 N. W. 712.

The general law in reference to the local assessor is found in chapter 342 of the Code (section 7106 et seq.). Under this law, "each assessor * * * shall, with the assistance of each person assessed, * * * enter upon the assessment rolls furnished him for that purpose the several items of property required to be entered for assessment. He shall personally affix values to all property assessed by him." Section 7106. The owner is required to assist the assessor in making out a list of his property and a penalty is attached for a failure or refusal to assist in listing property. The assessor is furnished by the auditor with assessment rolls and books suitable and proper for use in listing all classes of property. This general law provides that the assessment shall be completed by the first day of April, and the assessor shall attach to the assessment rolls his oath, and the statute sets out the form of oath.

Section 7122 of this chapter provides: "Such rolls shall be laid before the local board of review on or before the first Monday of April in each year for correction."

Section 7123:

"When such correction has been completed, the assessor shall proceed to make up the assessor's books in duplicate from such assessment rolls * * * and return to the county auditor, together with the assessment rolls, plat book, and all statements which have been furnished to him in connection with the assessment."

In addition to this chapter is the special chapter on banks heretofore referred to, which makes specific provision to guide the assessor in listing and assessing corporation stock and requires the corporation to furnish certain specific information under oath and to furnish a list of stockholders and likewise to separate and show separately the amounts of the capital stock and the surplus and undivided earnings. This chapter provides how the assessor shall arrive at the amount of the capital stock

to be assessed, and the thing he must do is to deduct from the capital stock whatever amount thereof, together with whatever amount of the surplus and undivided profits of the bank may be actually invested in real estate and owned by the bank, and the real estate shall be assessed as other real estate, and the value of the capital stock remaining at the same ratio of assessed value to actual value as the assessed ·value of real estate in the taxing district where such bank is located generally bears to its actual value. In the case of the banks in question, this was found to be 50 per cent. There is no question raised as to the correctness of this finding. Therefore, after deducting real estate and after reducing the remainder 50 per cent, the assessor thus arrived at the actual net value of the capital stock. One-fourth of this constituted the taxable value of the capital stock of the bank.

Does the fact that this assessment was not upon the regular assessment rolls deprive it of the virtue of a legal assessment, in view of the fact that it was not independently verified? The rolls themselves were verified according to statute, and in this oath the assessor states:

"That the actual and taxable values of all property, moneys and credits of which a statement has been made and verified by the oath of the person required to list the same, is herein truly set forth in such statement; that in every case, where I have been required to ascertain the amount or value of any property, I have diligently, and by the best means in my power, endeavored to ascertain the true amount and value and as I verily believe the actual and taxable values thereof are set forth in *the annexed return.*"

Both the assessors and the county auditor testified that each of these bank statements was returned *as a part of the assessment rolls.* It was in fact a part of the assessor's return of his assessment of property in his taxing district.

Under the statute, chapter 329-C2 of the 1931 Code of Iowa (section 6943-c11 et seq.), the state board of assessment and review has "general supervision of the administration of the assessment and tax laws of this state, of boards of supervisors and all other officers or boards of assessment and review in the performance of their official duties, in all matters relating to assessment and taxation"; has power "to prescribe and promulgate all forms of books and forms to be used in the listing and

assessment of property, and on or before November first of each year shall furnish to the county auditor of each county such prescribed forms of assessment rolls and other forms to properly list and assess all property subject to taxation in each county. It shall also from time to time prepare and furnish in like manner forms for any and all other blanks, memoranda or instructions which it deems necessary or expedient for the use or guidance of any of the officers over which it is authorized by law to exercise supervision.'' Section 6943-c27. The form which the plaintiff banks filled out and swore to as the basis for their assessment is ''Iowa Official Form No. 231,'' furnished by the state board of .assessment and review to the various county auditors in the state, who in turn deliver them to the assessors, who furnish these forms to banking corporations and other corporations owning capital stock. The directions to the assessor on this form are in the following language:

''THE FOLLOWING INFORMATION IS TO BE FILLED IN BY ASSESSOR AND WITH THE ASSESSMENT ROLL IS TO BE PASSED UPON BY THE BOARD OF REVIEW.''

It therefore appears that the highest taxing body of the state, which promulgates and formulates the forms and sends out specific directions to all assessors throughout the state of Iowa, has indicated that this bank statement, after the form on page 3 has been filled out by the assessor, is to be returned with, and as a part of, the assessment roll and is in fact the assessment roll of the bank that is to be considered by the board of review. It is only fair to assume that the officials of the bank, who were intrusted with this duty by the bank directors, read over this form and therefore knew that it was for the very purpose of assessing their capital stock, their surplus and undivided profits, and that when they filled out the form which the assessor is directed to fill out, they were simply doing it for his accommodation, and knew that, unless he changed the figures, the very figures they set down would be used as a basis of taxation, and would be submitted to the board of review for its consideration, and that if they had any objections and desired to present the same they would have to appear and make their objections in due time before the local board of review.

This court held in the case of First National Bank v. City of Council Bluffs, 182 Iowa 107, at page 119, 161 N. W. 706, in

legal effect that this bank statement, made out in the form as it was made out and submitted to the board of review in the instant case, was an assessment by the assessor of the specific property listed therein; that the actual and taxable value of the property was fixed and when submitted to the board of review, that it was for the board to approve or disapprove the assessment as made, and that from this bank statement alone the board of review could make and levy a valid assessment, even though there was nothing on the assessment rolls themselves. In that case the statement was not verified by the assessor and the question was raised, but not determined, as to the validity of the assessment made by the assessor on this so-called bank statement, without the same having been independently verified. It is true that the Supreme Court of this state has held in the case of Warfield-Pratt-Howell Co. v. Averill Grocery Co., 119 Iowa 75, 93 N. W. 80, that the tax rolls must be verified, stating:

"The purpose in requiring the oath is to secure a just valuation of the property to be taxed, and it is therefore for the protection of the taxpayer."

The matter of verification is again referred to in the case of Woodbine Savings Bank v. Tyler, 181 Iowa 1389, 162 N. W. 590, and is again referred to and discussed in the case of Fidelity Investment Co. v. White, 208 Iowa 519, 223 N. W. 884, 225 N. W. 868. In none of these cases, however, was the court confronted with the identical question which is now before us, namely, the return of a properly verified assessment roll, accompanied by the assessment of the bank on a separate sheet provided for that purpose by the state board of assessment and review, which the assessor testified was made out and returned as a part of his assessment rolls.

In a somewhat recent case decided by the United States Circuit Court of Appeals of the Eighth Circuit, Hannan v. First National Bank of Council Bluffs, 269 F. 527, at page 536, in considering the question of verifying an assessment roll, the court used the following language:

"A failure of the assessor to make his oath invalidates the assessment. Warfield-Pratt-Howell Co. v. Averill Grocery Co., 119 Iowa 75, 93 N. W. 80; Woodbine Sav. Bank v. Tyler, 181 Iowa 1389, 162 N. W. 590. But in the first of these cases it is

said that mere informalities not involving a departure from the statutory requirements will not defeat the tax, and in support of this is cited the case of Twinting v. Finlay, 55 Neb. 152, 75 N. W. 548, with the comment:

" 'In this last case the evidence showed the oath not to be attached to the assessment roll, and this was held a mere irregularity, as it was presumed, in fact, to have been taken.'

"We think this was intended to be and is the construction that should be given to this statute and that it is not necessary that the oath be physically attached to the papers constituting the assessment roll, provided the oath is taken and is in some way reasonably connected with the assessment roll. The essential requirements were that the assessor should make the oath and return it with the assessment roll, so that it may be known whether he has complied with the statutes or otherwise."

We are constrained to hold that, under the evidence in the cases now under consideration, the bank statements were returned as parts of the assessment rolls as directed by the state board of assessment and review; that they constituted assessments of the capital stock, surplus, and undivided profits of the plaintiff banks, and furnished a legal basis for the calculation of the tax to be levied against the stockholders of the respective plaintiff banks.

Appellants' contention that the taxpayer is entitled to the judgment of the assessor in fixing the value has little or no application to this case involving the assessment of the capital stock of a bank. In discussing this statutory law governing the assessment of banks in the case of First National Bank v. Burke, 201 Iowa 994, 196 N. W. 287, 289, we find this statement:

"It must be remembered that we are dealing with a mandate found in legislative enactment. The assessments in question are mandatory. Nothing is left to the discretion or judgment of the assessor, board of review, or taxing official. Nothing is left to any subordinate body to determine in what amount, against whom it shall be levied, or the manner or method of making the assessment and the apportionment. The statute itself fixes and determines the base of the assessment, and consequently any correction is mathematical and purely ministerial in its character. The bank itself furnishes the verified statement disclosing the data specified in the statutory requirement. The statute

leaves nothing for the assessor or the board of review to do, except to correctly compute the percentage of each shareholder. It is a problem in arithmetic, and the elements or factors of the problem are furnished by the bank. The statute prescribes the method in the solution of the problem.''

The same rule is laid down in the case of Ludeman v. County of Cerro Gordo, 204 Iowa 1100, 216 N. W. 712, 713. In this last case the assessor had erroneously assessed the capital stock to the Central Trust Company, the corporation, instead of to the individual stockholders. Nearly two years after the attempted assessment was made, the auditor corrected the tax list, and the names of the stockholders were substituted instead of the corporation to the extent of and in proportion to the amount of stock held by each stockholder. It was claimed that the tax was void for the reason that there never was an assessment levied against the plaintiff individually, who was one of the stockholders. The parties stipulated that the statement provided by the statute, section 7001 of the Code, was furnished by the corporation to the assessor and filed in the office of the county auditor by the assessor; that it contained a complete list of the shareholders, their residence, number of shares, and par value of the shares of each of said shareholders, together with a statement of assets and liabilities and the description of real estate of said Central Trust Company, and bore the notation ''Assessed April 19, 1924, roll 5820.'' The lower court held that the assessment was legal and it was affirmed by this court, upon the strength of the decision of the case just quoted from, and we said:

''The evidence before us does not disclose that the record was changed except to make it conform to statutory requirements. Clearly it was an authorized correction. Omitted property for the purpose of assessment is not involved. The actual value of each share of stock was fixed by the assessor from the verified statement of the trust company. There is no claim of error in the mathematical computation. The action of the auditor did not result in a new assessment, nor did it change or raise the assessment fixed by the assessor pursuant to statutory authority. * * *

''The county auditor in the instant case simply changed the assessment against the trust company to the appellant stockholder upon his shares of stock in said bank. This was the cor-

recting of an error in the assessment or tax list, which he was legally privileged to do without notice at any time before the taxes were discharged or paid.''

Likewise, in the assessments of the plaintiff banks, there is no claim of error in the computations or that the amounts assessed against the individual shareholders are incorrect in any particular. We find from a perusal of these two cases that this court has laid down the rule that the assessment of bank stock in the way and manner pointed out is mandatory; that there is very little left to the judgment or discretion of the assessor or any other taxing officer. The assessors accepted the valuations of the banks as correct and proper. Surely, if the auditor can change the assessment list after the taxes have been placed upon the delinquent tax books two years after the assessment is made, from the name of the corporation to the names of the individual members thereof, as was done in the Ludeman case, translated by the auditor from the information contained in the bank statement, then the auditor in the instant case, in making up the tax list from the statements furnished by the bank officials themselves, certainly was but carrying out a ministerial duty which in no way prejudiced the appellants. It did not constitute the listing of omitted property nor a change or alteration in the amount of the assessment or tax to be collected, and no notice of any kind was required to be served upon the taxpayer.

The principle that the taxpayer is entitled to the judgment of the assessor as laid down in the case of Burnham v. Barber, 70 Iowa 87, 30 N. W. 20, cited and relied upon by appellants, is undoubtedly a correct statement of the law as applied to ordinary assessments. The question here, however, is not as to the value placed upon the bank stock. It might have some application in the case of the assessment of bank stock if the question of value were involved, but it is not a question of value. When narrowed down and applied to the record before us, and when considered in the light of these more recent decisions involving assessments of bank stock, the force of appellants' argument disappears. Both the assessed and the assessors in the instant case recognized that the assessment of bank stock is almost entirely a matter of computation based on sworn statements of the bank officials. The assessor's sheet, attached to this sworn statement, is made up from the sheets filled out by the bank and unless

questioned, and in this case it was not and is not now questioned, the bank's figures are accepted, and under the plain provisions of the statute the bank officials apply the mathematical formula to the correct data and set the figures on the assessor's sheet for the convenience of the assessor. The assessor adopted the figures as his own; placed his O. K. thereon. This is in all respects equivalent to the assessor setting down the figures himself. The taxpayer was assisting the assessor in listing his own property as contemplated by the statute. In the case of property generally, the law does not attempt to specify in what way and manner the assessor shall arrive at the value of property to be assessed, while in the case of the assessment of corporation stock of banking corporations in this state, the law imposes upon the corporation itself the duty of furnishing the information or data, and then specifies exactly what the assessor shall do, and he is left no discretion in the matter whatsoever, unless he disputes the correctness of the figures contained in the bank statement.

Therefore, we conclude that at the time these actions were commenced, there was a valid tax, based on a legal and valid assessment; the assessment being irregular but not invalid.

 This brings us to a consideration of the second proposition under the issues in the case; appellants' second contention being that the assessments were wrongful in that other moneyed capital within the taxing districts which was used in competition with the investments of the capital stock of said banks was listed and assessed as moneys and credits and subjected to a six-mill levy, whereas the capital stock of the plaintiff banks was listed and classified as personal property and subjected to the consolidated levy of 169.9 mills in the Shenandoah taxing district and 117.1 mills in the Essex taxing district, and that this constituted an illegal discrimination against the banks and denied to the banks the right to have their property taxed the same as individuals, and that this violated section 2 of article VIII, and likewise section 6 of article I of the Constitution of the State of Iowa, and was also contrary to the provisions of section I of the Fourteenth Amendment to the Constitution of the United States, and violated section 5219 of the Revised Statutes of the United States, as amended (12 USCA section 548), and that the tax in excess of six mills is illegal and void. They also pleaded that the banks have offered and tendered payment of the amount of tax

due, based on a six-mill levy, which was refused, and the whole amount of the tax as computed by the auditor, applying the consolidated levy, was demanded by the county treasurer.

Considerable space in the abstracts is devoted to setting out testimony of individual taxpayers to the effect that they were the owners and holders of notes and certificates of deposit, some of the notes secured by real estate mortgages and some by chattel mortgages, and some unsecured, which when all added to-gether make a considerable sum, and it is claimed that these were the same sort of investments that were being made by the banks and in which the capital of the banks was invested, and therefore came within the provisions of section 5219 of the Revised Statutes of the United States, as amended (12 USCA section 548), and also section 7005 of the 1931 Code of Iowa. The appellee contends that the capital stock investments of the banks, according to the testimony of the officers of the banks, consisted almost entirely of government bonds, and that the investments of other individuals in the form of notes, chattel mortgages, real estate, first and second mortgages, were not investments in competition with investments of government bonds, and, furthermore, that the investments complained of, and which it is alleged were investments of capital in competition with the capital investments of the bank, fall within the exception provided for in section 5219 of the Revised Statutes, which is now found as section 548 of title XII of the United States Code, and which reads as follows:

"Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

None of the individual owners of the alleged moneyed capital were engaged in the banking or investment business. All of them, without exception, represented personal investments of their own money or that of their relatives, and the appellee cites numerous cases which support his contention.

As we view the matter, it is not necessary for us to pass upon these questions. Under the laws of this state, an administrative tribunal, the local board of review, is especially pro-

vided to take care of grievances such as wrongful classification of property for the purpose of taxation, and our court has held on numerous occasions that this remedy of making objections to the local board of review, and taking an appeal from an adverse ruling by such board to the district court, is the exclusive remedy. In the case of Griswold L. & C. Co. v. County of Calhoun, 198 Iowa 1240, at page 1242, 201 N. W. 11, 12, this court said:

"It thus appears that the authority of the board of review is plenary to correct errors in the classification and assessment of property and to increase or diminish the valuation fixed by the assessor. A tribunal having been created by the legislature, and invested with power to hear certain complaints and grievances in the listing and assessment of property, its jurisdiction in all such matters is exclusive of all other remedies allowed by law, except as hereafter shown."

And it is only when the error or illegality which invalidates a tax is found in the action of such board itself, or in the want of authority to levy the tax or to make the assessment, whereby the tax is not a lawful charge against the taxpayer, that the taxpayer can resort to remedies other than that of appearing before the board of equalization and appeal to the district court. The court further said in this case:

"The fundamental complaint of the appellants is that the property was erroneously classified by the assessor, and listed for taxation on the basis of banks and loan and trust companies, and not on the basis of moneys and credits. All that remained was for the proper officers to apply the rate of taxation to the assessment on the basis shown by the return of the assessor. The tax exacted may have been irregular, and the rate, on the assumption stated above, higher than it should have been. The irregularity in the classification and assessment of the property was peculiarly within the jurisdiction of the board of review, and complaint should have been made to that body. Having failed to make such complaint, appellants must be deemed to have waived the irregularity in the assessment."

See Steele v. Madison County, 198 Iowa 902, 200 N. W. 330; First National Bank of Montezuma v. Board of Review, 199 Iowa 1124, 201 N. W. 769; First National Bank of Newton v. Board of Review, 200 Iowa 131, 204 N. W. 223; Iowa Nat. Bank

v. Stewart, 214 Iowa 1229, 232 N. W. 445; Lamont Sav. Bank v. Luther, 200 Iowa 180, 204 N. W. 430. The same rule finds support in the decisions of the United States Supreme Court in the following cases: Keokuk & Hamilton Bridge Co. v. Salm et al., 258 U. S. 122, 42 S. Ct. 207, 66 L. Ed. 496; Burrill v. Locomobile Co., 258 U. S. 34, 42 S. Ct. 256, 66 L. Ed. 450; First National Bank of Greeley v. Board of Commissioners of Weld County, Colorado, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784; Iowa-Des Moines Nat. Bank v. Bennett et al., 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265.

In the Crawford County Bank case, 66 F. (2d) 971, 976, the United States Circuit Court of Appeals said:

"In this case, the discrimination was by the *assessor*. He classified these bank stocks as 'corporate stocks' (or 'moneyed capital') and the competitive taxpayers as 'moneys and credits.' This action could have been corrected by the board of review upon protest by appellant. It made no such protest."

There is no merit in the contention of the appellants that the facts were concealed from them and that they had no knowledge that the assessors were listing other moneyed capital as moneys and credits. There is no evidence of any concealment. The officers of the bank testified frankly that they knew in a general way that mortgage notes and personal notes, certificates of deposit in the hands of individuals were listed as moneys and credits by the assessors-in their districts, and that the same were taxed at six mills. They knew all the facts necessary to be known by any taxpayer. They had made out the figures themselves. They testified that they knew the capital stock would be subjected to the consolidated levy. They knew of the time and place of the meeting of the board of review; in fact, one of the officers of one of the banks was a member of one of the local boards of review at the time. They were presumed to know the law. The only fair inference to be drawn from the entire record is that the legal question raised in this litigation was an afterthought, brought to the attention of the officials of the bank, no doubt, by some decision by this or some other court of last resort, and counsel have with commendable earnestness and fidelity to their cause presented their arguments on this appeal.

Appellants do not question the existence of the administrative remedy, but contend that it was not available to the plaintiff

banks under the facts. After careful consideration of the facts as presented by the record and the legal authorities cited in the briefs, we are abidingly satisfied that the trial court's decision in each of said cases is correct. Not only was the administrative remedy of appearing before the local board of review available to the appellants, but under the law as it now stands, and as it was at the time these actions were begun, an individual taxpayer, aggrieved in matters such as are presented in these cases, might also resort to the state board of assessment and review. These administrative remedies having been provided by statute, plaintiffs are compelled to make use thereof, and cannot make use of the equitable process of injunction as was attempted in these cases.

The decision of the trial court must be, and is hereby, affirmed.—Affirmed.

ANDERSON, C. J., and ALBERT, MITCHELL, KINTZINGER, and PARSONS, JJ., concur.